## UNITED STATES v. COLLINS.

### (District Court, D. Oregon. May 14, 1906.)

#### No. 4,855.

1. CONTEMPT—COMMITMENT—EXPIRATION OF ORDER.

Where accused was committed for contempt for his refusal to appear as a witness before a grand jury and there produce certain records, etc., in response to a subpœna duces tecum, the term during which he could be imprisoned under such order expired on the discharge of the grand jury.

[Ed. Note.—For cases in point, see vol. 10, Cent. Dig. Contempt, §§ 253–254.]

2. SAME—PURGING CONTEMPT.

Where accused was imprisoned for his refusal to obey a subpœna requiring him to appear and produce records before a grand jury, and he remained recalcitrant until after the grand jury was discharged, he was not thereby purged of his contempt and was subject to sentence to imprisonment for a specified term.

[Ed. Note.—For cases in point, see vol. 10, Cent. Dig. Contempt, §§ 253–254.]

3. WITNESSES—INCRIMINATING QUESTION—BOOKS AND PAPERS—PRODUCTION.

Where accused was subpœnaed to appear before a grand jury, and to produce books, papers, and files of a certain firm, of which he was a member, on the investigation of a charge against the members of such firm for conspiracy to defraud the government, accused could not refuse to appear and produce such books and papers because they were self-incriminating, but was bound to produce the records and, after being sworn as a witness, object that the documents produced would tend to his incrimination, and therefore insist on his constitutional guaranty that their contents be not disclosed.

[Ed. Note.—For cases in point, see vol. 50, Cent. Dig. Witnesses, §§ 1038–1040.]

See 145 Fed. 709.

W. C. Bristol, U. S. Atty.

L. M. Curl and Percy R. Kelly, for defendant.

WOLVERTON, District Judge. The defendant at this time petitions the court to vacate the order heretofore made adjudging him guilty of contempt and directing his imprisonment until he complied with the mandate of the subpœna requiring him to bring the books, papers, files, etc., specified therein, upon two grounds, namely: First, that since entering the order the grand jury has been regularly discharged; and, second, that prior to such discharge of the grand jury the defendant was indicted jointly with his copartners, E. Dorgan and Francis Devine, and others, charged with the crime of violating the statutes of the United States relating to conspiracy to defraud the government. The order referred to, omitting the preliminary statement, is as follows:

"On consideration whereof, the court now finds the defendant to be in contempt. And it is ordered that said defendant shall appear before the said grand jury of this court on Saturday, April 28, 1906, at 11 o'clock in the forenoon of said day, then and there to testify as a witness, and that he shall then and there produce all the records, books, and papers specified in said subpœna. And it is further ordered that if said defendant shall fail so to appear before the grand jury, or shall fail to produce said records, books, and papers, that he be imprisoned in the county jail of Multnomah county, Oregon, until he shall be willing to obey the command of said subpœna and of this order."

It seems clear that, the grand jury having been discharged, the term of imprisonment as limited by the order under consideration has expired. If this is not so, then the order provides for a perpetual imprisonment, because there is no grand jury before whom the defendant can appear—a condition that is unwarrantable, and that the law will not tolerate. To be more exact, I should perhaps say that a condition has been brought about under which it has become impossible for the defendant now to comply with the order, and the law will not require of any person an impossible thing. Under the authorities, therefore, further imprisonment by virtue of that order cannot be insisted upon or enforced. Ex parte Maulsby, 13 Md. 625, Append.; In the Matter of Frederick Hall, 10 Mich. 210; Ex parte Rowe, 7 Cal. 176.

The defendant, however, is himself responsible for the condition —not that the grand jury has adjourned, but that he is unable to comply with the order—because he had abundant time and opportunity to appear and bring with him the documents called for by the subpœna before the grand jury adjourned, and it must be conceded that in the meantime he continued in contempt; and it must be further conceded that the mere fact that the grand jury was discharged does not purge him of his contempt. He continued recalcitrant notwithstanding the order, refusing compliance, and persisted in disobeying the mandate of the subpœna which he was directed to observe. Such conduct could in no sense be construed as purging him of his contempt, and he remains yet in contempt of the original order requiring him to produce the documents under the subpœna. And for this I have no doubt he is still liable for fine and imprisonment—either one or both. As was said in Ex parte Rowe, supra:

"The prisoner may still be liable to fine and imprisonment for disobeying the original order, but he cannot be further restrained of his liberty under the present warrant."

But it is insisted that the fact that Collins has been jointly indicted with his copartners and others for a conspiracy to defraud the government is tantamount to a showing that the documents called for are self-incriminating, and, being such, that the original order was erroneously made and entered, and that this purges him of his contempt, or, rather, that it shows he never was in contempt, because the matter he was called upon to produce was in reality privileged under the Constitution. I am unable to agree with counsel. It does not follow, because the defendant has been indicted with the other members of his firm and charged with the crime of conspiracy to defraud the government, that the books, papers, etc., called for by the subpœna have any connection with such indictment, or the crime charged, and much less that they would afford incriminating evidence against him. The only circumstance indicating that the documents sought have any such connection whatever is that the requirement of their production and the finding of the indictment are not remotely disassociated in point of time. This is all there is to show to the court that the one is the concomitant of the other, forming but the development of a single transaction. Other than this, there is nothing tangible in the record to indicate any vital relation of the one with the other. Indeed, the indictment was found without the aid of the papers called for; and, if anything is to be inferred from that circumstance, it is that such papers were designed for use other than to inquire into the conduct of the members of the firm as it pertains to the charge preferred. Collins had an opportunity of producing the books before the grand jury, and there developing the fact, if it be a fact, that the books and papers might tend to incriminate him, without the least jeopardy to himself; and, if such a condition had appeared, the court would have been bound, under the Constitution and the law of the land, to protect him, and would, if the matter had been called to its attention, without hesitation have intermitted further inquiry concerning such documents. As I said when the matter was up before, quoting from an eminent jurist:

"To entitle a party called as a witness to the privilege of silence, the court must see, from the circumstances of the case and the nature of the evidence which the witness is called to give, that there is reasonable ground to apprehend danger to the witness from his being compelled to answer," although, "if the fact of the witness being in danger be once made to appear, great latitude should be allowed to him in judging for himself of the effect of any particular question."

The same principle applies to the production of papers. When it is once made to appear that they will tend to incriminate the witness, he is as much protected from the harm that would befall him by reason of a disclosure of their contents as from divulging incriminating matter by word of mouth. The result is the same in either event.

I said, furthermore, at that time, which proposition is a deduction from the authorities, that:

"Until he [the witness] is called upon to disclose the incriminating matter, involving himself in a transgression of law for which he might be subject to prosecution, he is not in a position to claim the exemption."

The defendant is in no better position now than he was then. He has not made it appear, nor do the subsequent developments indicate such a thing, except possibly by the remotest inference, that the books, papers, etc., of the firm of Dorgan & Devine will incriminate him, and certainly their production under the subpœna, even if they contain incriminating matter, would not jeopardize him in his constitutional right in any particular. As was said in the late case of Hale v. Henkel, 201 U. S. 43, 26 Sup. Ct. 370, 50 L. Ed. 652, decided by the Supreme Court of the United States:

"We think it quite clear that the search and seizure clause of the fourth amendment was not intended to interfere with the power of courts to compel, through a subpœna duces tecum, the production, upon a trial in court, of documentary evidence."

The courts have the same authority to compel a production before the grand jury of such evidence. Indeed, in that very case the production was required before that body and the proceeding was upheld. The defendant could readily have purged his contempt by producing the documents required of him before the grand jury. He need not have disclosed their contents, and could have, when questioned, after taking the oath as a witness, developed the fact, if such it were, that such documents would tend to his incrimination; and from that moment he would have had the right to insist upon his constitutional guaranty. But it was not enough for him merely to assert, out of court, that the documents contained incriminating matter to his detriment. This defense was urged on the previous hearing, and found insufficient, and he is in no better condition or position now than he was then.

There is no thought, that I am aware of, of pursuing an inquisition against the defendant or his firm. If there was, it would be promptly checked; the purpose being to obtain legal evidence only in a proceeding recognized by law. The time has gone by when the defendant can relieve himself from further liability to punishment by producing the books, papers, files, etc., under the subpœna, before the grand jury, that body having been discharged; and, not having yet shown that such documents contain matter tending to his incrimination, he has in no way purged his contempt.

Being yet in contempt, he should be punished, and the order of the court will be that he be further imprisoned in the county jail of Multnomah county for the period of four months.