## HAIMSOHN v. UNITED STATES.

(Circuit Court of Appeals, Sixth Circuit. November 10, 1924.)

No. 4044.

1. **Bankruptcy �köö446—Finding of referee in contempt proceedings, affirmed by District Judge, will not be disturbed, if supported by any substantial evidence.**

On review, an order adjudging a bankrupt in contempt, based on a finding of the referee, affirmed by the District Judge, will not be reversed, if the finding is supported by any substantial evidence.

2. **Bankruptcy ⊦öö241(2)—Order adjudging a bankrupt in contempt held sustained by the evidence.**

An order adjudging a bankrupt in contempt for "refusing to be examined according to law," in violation of Bankruptcy Act, § 41, subd. 4 (Comp. St. § 9625), based on a finding of the referee, affirmed by the District Judge, *held* sustained, where bankrupt, though submitting to examination, failed reasonably to explain a shrinkage of some $40,000, in his stock of merchandise worth $50,000, but throughout his examination showed a disposition to evade and refuse to reveal the disposition of his assets.

In Error to the District Court of the United States for the Western District of Tennessee; J. W. Ross, Judge.

Proceeding for criminal contempt against Henry Haimsohn, bankrupt. From a judgment holding him in contempt, he brings error. Affirmed.

F. S. Elgin, of Memphis, Tenn., for plaintiff in error.

A. A. Hornsby, Asst. U. S. Atty., of Memphis, Tenn. (S. E. Murray and W. H. Fisher, both of Memphis, Tenn., on the brief), for the United States.

Before DONAHUE, MACK, and KNAPPEN, Circuit Judges.

MACK, Circuit Judge. Plaintiff in error, an adjudicated bankrupt, was certified by the referee in bankruptcy, on petition of the trustee in bankruptcy, to be guilty of contempt for "refusing to be examined according to law," pursuant to section 41, subdivision 4 of the Bankruptcy Act (Comp. St. § 9625).[1] The District Judge, after hearing further evidence, adjudged him so guilty of the contempt before the referee in bankruptcy and sentenced him to 90 days in jail.

[1, 2] The sole question before us is whether or not there is any substantial evidence to sustain the finding. Davidson v. Wilson, 286 F. 108 (C. C. A. 3). And that depends entirely upon whether or not one who has in fact submitted himself four times to examination can legally be found to have "refused to be examined according to law" because on the examinations he has failed reasonably to explain the shrinkage of some $40,000 out of something over $50,000 worth of merchandise purchased during seven months. In his opinion Judge Ross summarizes the situation as follows:

"The main contention of defendant is that he sent considerable sums of money to his relatives in Rumania, of which he kept no record, and as to which he had no method of ascertaining even approximately the correct amount; that he contracted the habit of gambling with some unknown parties, who frequented his store, and lost to them great sums of money, of which he had no record, and no method of ascertaining correctly the amount so lost; that his living expenses were considerable, in fact, that for the six months preceding his failure they amount to $4,000; that his wife was extravagant, took trips which cost him vast sums, was in the hospital at a large expense; and that the expenses of

---

[1] A person shall not, after having taken the oath, refuse to be examined according to law.

his store were approximately $2,500 for the six months mentioned. Furthermore, he claims to have checked out within that period about $6,000, and that the total of all these sums was approximately $19,500. Furthermore, that his stock of goods depreciated greatly in value within this time, and that this depreciation accounts for the difference between expenditures and the stock of goods on hand.

"The record discloses that in the course of his examination before the referee, as computed by counsel for the trustee, in answer to questions seeking to elicit information which would enable the creditors to ascertain what became of the assets of the estate he replied, 'I don't know,' or words to that effect, 82 times, that to numerous questions he gave evasive answers, and the referee states that his demeanor on the whole was that of a man seeking to evade the truth rather than to honestly endeavor to aid the court and the creditors in arriving at the true condition of his estate. In fact that his conduct and his answers were such as to show on his part a disregard for the courtesy due the court and were on the whole contemptuous. * * *

"He was examined in person at considerable length before this court, and that examination, as well as the record in this case, disclosed the fact that the court was not dealing with an ignorant, timid, unsophisticated foreigner, to whom the proceedings caused confusion, but was dealing with a shrewd, crafty business man, who knew more than he desired to disclose. He undertook to explain the absence of his estate by the expenditure of moneys in the methods above stated. * * *

"To accept his explanation as true, we would have one doing a business from which during the six months from July to January, inclusive, he obtained receipts which enabled him to deposit in the bank with which he did business $4,841.51, or in other words less than $10,000 per year, and at the same time was expending approximately $40,000 a year, practically the whole of which was for his living expenses, money sent to his relatives in Rumania, gambling, and the extravagances of his wife. The mere statement of this for a business of this size is evidence of the fact that it is too great a tax on human credulity to have the support of any degree of reason.

"The record as presented in the examination of defendant in person before this court was convincing that there was a studied, determined effort on the part of the defendant to refuse to reveal the disposition of assets to which his creditors were entitled."

We may not consider the weight of this evidence. It suffices to say that the trial judge, who, like the referee, saw and heard the bankrupt testify, could reasonably find that beyond a reasonable doubt the defendant was evading a full disclosure and a frank answer to questions. We concur in the views expressed in In re Schulman, 177 F. 191 (C. C. A. 2), In re Appel (D. C.) 211 F. 495, and In re Kaplan, 213 F. 753 (C. C. A. 3), 130 C. C. A. 267, that this constitutes "a refusal to be examined according to law." See, too, In re Hudgings, 249 U. S. 378, 39 S. Ct. 337, 63 L. Ed. 656, 11 A. L. R. 333, in which In re Appel, supra, is cited with approval.

As no question of constitutional privilege to refuse answers was raised, the recent decision of the Supreme Court in McCarthy v. Arndstein, 45 S. Ct. 16, 69 L. Ed. ——, Oct. 20, 1924, is not involved.

Judgment affirmed.