## LOUBRIEL v. UNITED STATES.

(Circuit Court of Appeals, Second Circuit. January 4, 1926.)

No. 240.

1. **Habeas corpus** ⬤⟿22(2)—**Writ will not lie to review order adjudging relator in contempt of court.**

Habeas corpus will not lie to review order adjudging relator in contempt of court.

2. **Grand jury** ⬤⟿36—**Witness may be committed for contempt in making evasive answers, as well as for refusal to answer.**

A witness before grand jury, whose answers are evasive and put forward to avoid duty of answering, may be committed for contempt as though he had refused to answer.

3. **Grand jury** ⬤⟿36—**Witness cannot refuse to testify because testimony will show falsity of earlier testimony.**

Witness before grand jury is not relieved of duty to testify because his testimony will prove falsity of testimony previously given on the same hearing.

4. **Grand jury** ⬤⟿36—**Detention under commitment for contempt of one refusing to testify before grand jury improperly continued after adjournment of that body.**

Duty of a witness subpœnaed to testify before particular session of grand jury ends on adjournment of that body, and he cannot be thereafter detained under commitment for contempt until he shall so testify.

Appeal from and in Error to the District Court of the United States for the Southern District of New York.

Manuel Leon Loubriel was committed for contempt in refusal properly to testify before grand jury, and he brings error to review an order discharging a rule to show cause why he should not be released from custody, and appeals from an order dismissing a writ of habeas corpus to review his detention. Order dismissing writ of habeas corpus affirmed, order discharging rule reversed, and plaintiff in error discharged.

(1) Sur writ of error to an order of the District Court for the Southern District of New York discharging a rule nisi of November 18, 1925, to show cause why the plaintiff in error should not be released from custody.

(2) Sur appeal from an order of the District Court for the Southern District of New York dismissing a writ of habeas corpus to review the detention of the appellant.

The facts disclosed by the record are as follows:

Loubriel, the plaintiff in error and appellant, on September 29, 1925, was summoned before the grand jury for the Southern district of New York upon subpœna, and was questioned respecting his knowledge of the disposition of certain alcohol. It appeared that he was the employee of one Dupouy, a dealer in perfumery, and the theory of the investigation was that he was disposing of Dupouy's products to persons who could and did convert them into intoxicating beverages. In especial, he was questioned as to whether he knew the names of Dupouy's customers. He said that he had been in business for 25 years, and that the customers knew him personally and had heard of the business by circular, but that, though he knew some of them, he did not know their names. The sales, he said, were paid by cash or check and in no case was credit given. The alcohol he delivered to the customers by giving them delivery orders on the warehouse in which it was stored. On this statement the grand jury found Loubriel in contempt, and he was taken before the District Judge, who directed him to tell the names of his customers. Upon his return to the grand jury room, he said that he did not know personally any of his customers, or their names, and that he had no records which would show them, although some of the transactions were in large amount, between $500 and $1,000. Being taken a second time before the court, on a second certificate of the grand jury that he was obstructing their investigation, the court committed him until he should answer.

Later, on October 9th, having remained meanwhile in custody, he applied for a writ of habeas corpus, which was dismissed, and thereupon declared that he was willing to purge himself of contempt. At this time the grand jury, on whose certificate he had originally been committed, had been discharged; but a new grand jury was in session, before which he went and gave the name of one customer in Havana, and another in Venezuela, but repeated that he did not know any of the others. He added that he got many of his orders on the telephone, but could not remember the names of all of the

men who called him. He recognized the given names of some, when questioned, but would or could recall nothing more. After further examination of substantially the same sort, he was again certified by the second grand jury as not having purged himself of his contempt, and was remanded to custody.

This record having been brought up upon rule nisi, the District Court on November 20, 1925, discharged the rule. It is to this order that the writ of error issued. Before the rule nisi was discharged, he was taken before the November grand jury, and there questioned along the same lines. At this time he asserted his constitutional privilege, on the ground that he had been charged with the crime of perjury and criminal contempt, and other crimes against the National Prohibition Act (Comp. St. Ann. Supp. 1923, § 10138¼ et seq.) and that any answers would at that time tend to incriminate him. The petition for the writ of habeas corpus recited these additional facts, but the District Court dismissed it, without requiring a return.

Isaac Reiss, of New York City (Charles H. Tuttle and Emily C. Holt, both of New York City, of counsel), for plaintiff in error and appellant.

Emory R. Buckner, of New York City (C. D. Williams, Sp. Asst. U. S. Atty., of New York City, of counsel), for the United States.

Before ROGERS, MANTON, and HAND, Circuit Judges.

HAND, Circuit Judge (after stating the facts as above). [1] The order dismissing the writ of habeas corpus must be affirmed. We understand the case of Craig v. Hecht, 263 U. S. 255, 44 S. Ct. 103, 68 L. Ed. 293, to have established that the writ does not lie to review an order adjudging the relator in contempt of court. Cases like Ex parte Hudgings, 249 U. S. 378, 39 S. Ct. 337, 63 L. Ed. 656, 11 A. L. R. 333, are confessedly exceptional in their character. We read the last declaration of the Supreme Court as indicating a disposition substantially, if not altogether, to eliminate the exception, where a direct review of the order is possible.

[2] Upon the writ of error, the first question is of power; that is, whether, if Loubriel's answers were an evasion of his duty to disclose what he knew, he might be committed as though he had refused point blank to answer at all. We held in In re Schulman, 177 F. 191, 101 C. C. A. 361, that a bankrupt's disclaimer of any knowledge about what he must in the nature of things have known would not be taken as compliance with his duty as a witness. The Circuit Court of Appeals for the Sixth Circuit followed us in Raimsohn v. United States (C. C. A.) 2 F. (2d) 441, and the Circuit Court of Appeals for the Third Circuit in In re Kaplan Bros., 213 F. 754, 130 C. C. A. 267. The District Court for the Southern District of New York has several times so ruled. In re Fellerman (D. C.) 149 F. 244; In re Steiner (D. C.) 195 F. 299; United States v. Appel (D. C.) 211 F. 495. Ex parte Hudgings, supra, instead of throwing any doubt upon the power, gave it the express sanction of the Supreme Court.

The question is no less than whether courts must put up with shifts and subterfuges in the place of truth and are powerless to put an end to trifling. They would prove themselves incapable of dealing with actualities if it were so, for there is no surer sign of a feeble and fumbling law than timidity in penetrating the form to the substance. We have not the least doubt of the power of the District Court to punish a witness for an evasion patently put forward to avoid his duty. No doubt, since its exercise is drastic, it is to be used with caution, but at times no other means exists to prevent an entire miscarriage of justice. Of its limitations we shall have more to say.

[3] Nor does it make the least difference that compliance may furnish evidence of the falsity of the earlier statement. Perhaps all a man's testimony upon a continued inquiry must be taken together, and no prosecution will lie if he recants before he is through. People v. Gillette, 126 App. Div. 665, 111 N. Y. S. 133. But we do not rely upon that case, or mean to accept the doctrine. We may assume the opposite, and suppose that subsequent admissions at the same hearing may be used against the witness to prove his guilt in uttering the earlier. Nevertheless his duty to testify exists by hypothesis before the predicament which his tergiversation has created; he cannot absolve himself of that duty by an initial contumacy, whatever disguise he may choose for it. It continues until the inquiry is at an end, however he may have enmeshed himself in his own toils. Were it not so, even cross-examination would be impossible, and a hardy knave could block the search for truth by the first preposterous fancy which he chose to put forward. We do not mean necessarily to include a second and independent hearing, even though concerned with the same subject. Whether or not one may then claim a privilege by virtue

of the peril from his earlier testimony we do not say. In Daniels v. United States, 196 F. 459 (C. C. A. 6) 116 C. C. A. 233, so much was said obiter, and Cameron v. United States, 231 U. S. 710, 34 S. Ct. 244, 58 L. Ed. 448, is not to the contrary. But there is a clear distinction between a single inquiry and succeeding ones; as to the first there is no doubt.

[4] We have considered the point of power only because it was challenged on the supposed authority of Ex parte Hudgings, supra. However, we think that its limitation has not been properly observed, even assuming that the record in the case at bar shows that Loubriel was evading his duty, a point on which we are not agreed. His supposed contumacy, if any, was at once a contempt, punishable as such, and a continued obstruction to the investigation of the grand jury. The committal did not attempt to punish it as a contempt, but to compel him to perform his duty. The duty in turn was measured by the subpœna, the only process under which he could be required to appear and testify at all. But the subpœna did not require his attendance before any other than the September grand jury. When that body adjourned, Loubriel was under no further duty to testify, and could, of course, be no longer compelled to discharge a duty which had ended. We agree with Judge Wolverton's decision in U. S. v. Collins (D. C.) 146 F. 553, and the analogy of legislative contempts seems to us apposite. Marshall v. Gordon, 243 U. S. 521, 542, 37 S. Ct. 448, 61 L. Ed. 881, L. R. A. 1917F, 279, Ann. Cas. 1918B, 371; Anderson v. Dunn, 6 Wheat. 204, 231, 5 L. Ed. 242. Loubriel still remained subject to punishment for any contempt (U. S. v. Collins, supra), and to a prosecution for perjury, but he could not be lawfully detained thereafter, merely to compel compliance with the subpœna.

Nor does it make any difference that the order of committal gave him leave to purge himself before another grand jury. Each investigation is separate and independent; it terminates with the grand jury which undertakes it, and the next does not take it up as unfinished business. The order, if it could be construed as a direction to testify before another grand jury, would have been void. If Loubriel was to be punished, his punishment must be fixed; if he was to be coerced, it might be only while the inquiry was on. The investigation could not be indefinitely continued until the pains of punishment overcame his will, even if the statute did not make the inquiries several and separate. The reasons which forbid such procedure go very deep into the past. Even when men did not wince at the most awful sanctions, the evidence procured was regarded with suspicion. A man, faced with perpetual imprisonment till he discloses his confederates, will in the end find confederates to disclose. There is no modern engine to effect the result; the costs are too high, and the results too meager.

Order reversed; plaintiff in error discharged.