831 F.2d 292
Unpublished Disposition
 NOTICE: Fourth Circuit I.O.P. 36.6 states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Fourth Circuit.
UNITED STATES of America, Plaintiff/Appellant,
v.
(UNDER SEAL), Defendant/Appellee.
UNITED STATES of America, Plaintiff/Appellant,
v.
(UNDER SEAL), Defendant/Appellee.
UNITED STATES of America, Plaintiff/Appellant,
v.
(UNDER SEAL), Defendant/Appellee.
UNITED STATES of America, Plaintiff/Appellant,
v.
(UNDER SEAL), Defendant/Appellee.
In re John DOE.
UNITED STATES of America, Plaintiff/Appellant,
v.
(UNDER SEAL), Defendant/Appellee.
 Nos. 86-5589, 86-5590, 86-5591, 86-5592 and 86-5092.
 United States Court of Appeals, Fourth Circuit.
 Argued: Dec. 11, 1986.
Decided: Oct. 1, 1987.
 
 Martin Patrick Sheehan on brief for appellant.
 Patrick Shannon Casey on brief for appellee.
 N.D.W.Va.
 REMANDED WITH INSTRUCTIONS
 Appeal from the United States District Court for the Northern District of West Virginia, at Elkins. Robert E. Maxwell, Chief District Judge. (Misc. 86-312-E).
 Before WIDENER, JAMES DICKSON PHILLIPS, and CHAPMAN, Circuit Judges.
 PER CURIAM:
 
 
 1
 The United States appeals from certain orders of the district court that have quashed a grand jury subpoena and denied the government's application for ex parte orders to require compliance with other various grand jury subpoenas. Soon after the district court's rulings, the grand jury was discharged. We hold that, under the peculiar circumstances of this appeal, the grand jury's discharge has mooted this appeal.
 
 
 2
 One of these cases arises out of a federal grand jury investigation into a debtor's bankruptcy proceeding. The debtor's former counsel, who represented him in his earlier bankruptcy litigation, was invited to appear on December 11, 1985 before a federal grand jury and testify concerning his knowledge of the bankruptcy proceedings. The debtor, through new counsel, moved to intervene and to quash whatever subpoena issued to his former counsel based on his assertion of both the attorney-client privilege and the work product privilege. In fact, a subpoena had not then been issued. Nevertheless, a hearing was held before the district court wherein the Assistant United States Attorney announced plans to require the former counsel to appear before the grand jury and to formally seek a subpoena if necessary to obtain a ruling by the district court on the privilege issues.
 
 
 3
 The district court conducted an in camera examination of the debtor's former counsel. As part of its review, the district court had the government submit a list of questions that it proposed to propound to the former counsel. In a written order dated May 7, 1986, the district court held that the communications between the debtor and his former counsel were privileged and accordingly granted the motion to quash.
 
 
 4
 The government also filed applications on February 20, 1986 for three ex parte orders which would require certain credit reporting agencies to honor grand jury subpoenas.[1] As part of the applications, the United States submitted proposed subpoenas with return dates of March 17, 1986, the next day the already convened grand jury would be in session. On May 7, 1986, the district court denied the government's applications but suggested that, when a new grand jury was impaneled, the applications could be renewed.
 
 
 5
 On February 26, 1986, the government filed another application for an ex parte order. That application sought an order directing the West Virginia State Tax Commissioner to honor an earlier grand jury subpoena directed to him with a return date of January 27, 1986. The application also included a new subpoena, slightly different from the old one, with a return date of March 17, 1986. On May 9, 1986, the district court entered an order denying the application without prejudice. In that order, the district court held that, since the subpoena as originally issued and as amended sought disclosure directly to the federal grand jury, the subpoena did not comply with the Tax Disclosure Act's requirement that any disclosure be made to an officer or employee of a federal agency. See 26 U.S.C. Sec. 6103(i)(1)(A). Accordingly, the lower court granted leave for the government to amend its subpoena, within 20 days, to comply with the Act. But the grand jury had been discharged on May 8th, the day before.
 
 
 6
 Thus, the three orders of the district court presented for us to review were entered on May 7 and 9, 1986. However, all of the subpoenaed witnesses and information were directed to appear before the particular federal grand jury which was next regularly in session on March 17, 1986 but which was discharged on May 8, 1986. Accordingly, we decide whether or not this appeal is moot.
 
 
 7
 In the case involving the attorney's privilege, while it may be true that the district court's ruling is correct that the client expected confidentiality, nevertheless the government forcefully argues that any attorney-client privilege was waived by the fact that the client testified extensively in his bankruptcy proceeding of conversations with his attorney about the same subject matter concerning which the government now seeks to inquire, not to mention the fact that the schedules in bankruptcy are public papers. In the case involving the subpoena to the State Tax Commissioner of West Virginia, the government likewise persuasively argues that, while such information as may have been in the hands of the State Tax Commissioner and received from the federal government may well be subject to the federal statutory privilege and disclosure restrictions under 26 U.S.C. Sec. 6103(i)(1)(A), no such privilege should attach to returns filed under West Virginia state law, and, since the West Virginia State Tax Commissioner preferred, even if not required, a subpoena supported by a court order, the refusal of such was an abuse of discretion. In the cases involving the disclosure of information from consumer reporting agencies under 15 U.S.C. Sec. 1681b, the district court did not act on the request until the grand jury had been discharged.
 
 
 8
 In the face of these arguments on the merits and otherwise and the government's entreaty to decide the case now, we are met with the unanimous decisions in reported cases from the circuits that the discharge of an investigating grand jury ends its authority and thus renders moot an appeal arising out of that grand jury's actions. See In Re Grand Jury of August, 1965, 360 F.2d 917 (7th Cir.1966); Graziadei v. United States, 319 F.2d 913 (7th Cir.1963); Loubriel v. United States, 9 F.2d 807 (2d Cir.1926).
 
 
 9
 The United States suggests that the grand jury was discharged in order to moot these cases, while the attorney whose testimony is sought stands on the ground of mootness. The district court suggested that the matters, except the subpoena for the attorney, should be considered before the next grand jury which meets. In that respect, we note no dearth of grand juries in that district. For the 5-year period from January 1, 1982 through December 31, 1986, grand juries were in session in that district more than 54 months out of the 60 months involved at one place of holding court or another (we include in the 54 months' period two grand juries which met simultaneously for seven months). The time between the convening and the discharge of grand juries varied radically, however, from just under three months to almost eleven months, and, from the limited information presently available to us, they do not seem to have been convened at stated intervals nor discharged at the end of previously stated periods. While all of this may be well, it does not make for easy relations between the district court and the United States, and the discharge of the grand jury in question at the particular time it was discharged, with the timing of the action of the district court on the government's requests, could not have helped any uneasy relations which may have existed at that time.
 
 
 10
 We are not unsympathetic to the government's position that these matters are capable of repetition, yet evading review under Southern Pacific Terminal v. Interstate Commerce Commission, 219 U.S. 498 (1911), and many subsequent cases. Yet, we do not feel that this is an appropriate case at this time in which to create a possible conflict in the circuits.
 
 
 11
 Noting the frequent availability of grand juries in the district involved, although not convened at stated intervals nor discharged at previously stated times, we are disposed to follow at this particular time the Seventh and Second Circuits in holding that these cases are moot. In this respect, we give considerable weight to the suggestion of the district court that the United States make application to the next grand jury. Having given weight to the district court's suggestion, we feel confident it will act promptly on any further requests of the government in these cases or on motions to quash subpoenas. We suggest that the United States make its applications on the first day the next grand jury is convened, or cause subpoenas to be issued with return on that day, and that it request prompt action by the district court with respect to the same. If its applications are denied or the subpoenas quashed, as they were here, that should give the United States time for an expedited appeal. If the district court declines to act on the applications, then the United States may seek relief in this court, and, as to that, of course, we express no opinion either as to an avenue of relief, the result thereof, or the merits of the government's various applications for subpoenas which were involved here. We should add, however, that, since these matters previously have been before the district court, no reason suggests itself as to why they should not receive prompt consideration by the district court upon the convening of another grand jury and the filing of proper applications by the government.
 
 
 12
 The peculiar circumstances surrounding these applications for subpoenas by the government in these particular cases are unlikely to reappear, and, for that reason, we call to the attention of the parties that our holding of mootness in these cases might not be repeated in cases involving the same subject matter but on different facts. " 'The justiciability doctrine [is] one of uncertain and shifting contours.' " United States Parole Commission v. Geraghty, 445 U.S. 388, 401 (1980).
 
 
 13
 These appeals accordingly are remanded to the district court with instructions to dismiss the same as moot.
 
 REMANDED WITH INSTRUCTIONS