RECOMMENDED FOR FULL-TEXT PUBLICATION
Pursuant to Sixth Circuit Rule 206
File Name: 06a0009p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

STATE OF OHIO,

        *Plaintiff-Appellee,*

    *v.*

JOHN DOE,

        *Defendant-Appellant.*

No. 05-3880

Appeal from the United States District Court
for the Southern District of Ohio at Dayton.
No. 04-00155—Walter H. Rice, District Judge.

Argued: November 1, 2005

Decided and Filed: January 10, 2006

Before: DAUGHTREY and COLE, Circuit Judges; BARZILAY, Judge.[*]

_____

**COUNSEL**

_____

**ARGUED:** S. Adele Shank, LAW OFFICE OF S. ADELE SHANK, Columbus, Ohio, for Appellant. Carley J. Ingram, OFFICE OF THE PROSECUTOR, Dayton, Ohio, for Appellee. **ON BRIEF:** S. Adele Shank, LAW OFFICE OF S. ADELE SHANK, Columbus, Ohio, Lawrence J. Greger, Dayton, Ohio, for Appellant. Carley J. Ingram, John A. Cumming, OFFICE OF THE PROSECUTOR, Dayton, Ohio, for Appellee.

_____

**OPINION**

_____

    R. GUY COLE, JR., Circuit Judge. Defendant-Appellant John Doe, a/k/a Beth Goldstein Lewis, a/k/a Beth Lewis Trimmer (hereinafter "Lewis"), appeals the decision of the district court ordering her to respond to any Ohio grand jury subpoena served on her that seeks to compel disclosure of information regarding the 1999 disappearance of nine-year-old Erica Baker. For the reasons set forth below, we conclude that the district court did not have removal jurisdiction over this matter, and we VACATE the decision of the district court and REMAND this case to state court.

_____

[*] The Honorable Judith M. Barzilay, Judge of the United States Court of International Trade, sitting by designation.

I.

Lewis is a former federal public defender who represented Jan M. Franks in a federal criminal prosecution on drug charges in district court in Dayton, Ohio. Franks died in December 2001, and the State of Ohio believes that she may have conveyed information to Lewis concerning the 1999 disappearance of Erica Baker.

The matter now before us arose from an effort to compel Lewis to answer certain grand jury interrogatories concerning her communications with Franks. Ohio statutory law establishes that attorney-client privilege generally survives a client's death, but the statute permits a surviving spouse to waive a deceased spouse's privilege. Ohio Rev. Code § 2317.02. Lewis resists responding to the interrogatories, arguing that the communications with her former client continue to be protected under federal attorney-client privilege law. The United States Supreme Court has held that the federal common law attorney-client privilege survives a client's death and has not recognized any exception that would allow waiver in the criminal context. *Swidler & Berlin v. United States*, 524 U.S. 399 (1998).

In June 2002, a Montgomery County Grand Jury subpoenaed Lewis, who appeared before it but refused to respond to certain interrogatories on the ground that to do so would violate her deceased client's attorney-client privilege. A hearing was conducted on June 25, 2002, in the Montgomery County Court of Common Pleas, and the court found that Franks's surviving spouse, Shane Nolan Franks, had validly waived Franks's attorney-client privilege, pursuant to Ohio law, and determined that Lewis was required to answer the interrogatories that had been propounded by the grand jury. Upon Lewis's continued refusal to respond to the interrogatories, the court found Lewis in contempt of court. The court gave Lewis the opportunity to purge herself of contempt by answering the grand jury's questions before noon the following day, and further ordered that if not thereby purged, Lewis was to be incarcerated until she purged herself of the contempt or was otherwise released as provided by law. *State v. Doe*, No. 2002 CR 01975 (C.P. Ct. Montgomery County, Ohio June 26, 2002).

Lewis appealed the contempt order in state court, arguing state law defenses of statutory interpretation, public policy, and common law. The Court of Appeals of Montgomery County, Ohio affirmed the judgment of the trial court. No. 19408, 2002 WL 31105389 (Ct. App. Ohio Sept. 19, 2002). Lewis appealed to the Supreme Court of Ohio, which affirmed the Court of Appeals decision in an opinion issued March 3, 2004. 803 N.E.2d 777 (Ohio 2004). The Supreme Court of Ohio also issued a mandate commanding the Montgomery County Court of Common Pleas to carry its judgment into execution.

Lewis filed a motion for reconsideration with the Supreme Court of Ohio, raising federal defenses for the first time, which was denied without opinion on May 13, 2004.[1] 808 N.E.2d 400 (Ohio 2004). The Supreme Court of the United States denied Lewis's petition for *certiorari* in October 2004. 125 S. Ct. 353 (2004).

During the course of Lewis's appeals of her contempt order, the term of the grand jury that had issued Lewis's June 2002 subpoena expired. *See* Ohio R. Crim. P. 6(G) (establishing term of grand jury as four months and permitting extension to nine months). Under Ohio law, a grand jury subpoena and any related civil contempt order expire when the term of the grand jury ends, and a recalcitrant witness held in custody must be released. *State v. Kilbane*, 400 N.E.2d 386, 390 (Ohio 1980); *State v. Granchay*, 204 N.E.2d 562, 565 (Ct. App. Ohio 1964). Ohio case law does not appear to address the question of whether, upon the impaneling of a new grand jury, a separate contempt order must formally issue. None of the opinions over the course of Lewis's state court appeals process addresses whether Lewis's 2002 subpoena and contempt order were enforceable to compel her testimony before a successor grand jury upon the expiration of the first grand jury term.

---

[1]Under Ohio law, the Supreme Court of Ohio will not address a question, including a federal constitutional question, unless the question was presented in the court below. *State v. Williams*, 364 N.E.2d 1364, 1367 (Ohio 1977).

On March 5, 2004 (after the Supreme Court of Ohio denied Lewis's appeal but before Lewis moved for reconsideration), a new grand jury issued a second subpoena compelling Lewis's testimony. On May 13, 2004, the Montgomery County Court of Common Pleas scheduled a hearing for May 17, 2004, to determine if Lewis would comply with the second subpoena. On May 14, 2004, Lewis removed the case to federal court under 28 U.S.C. §§ 1441 and 1442(a)(3).

The district court denied the State's motion to remand. First, the court concluded that removal of this action to federal court was not barred by the entry of a final judgment in state court, because the state court proceedings pertained to the June 2002 grand jury subpoena, whereas the proceedings removed to federal court were a separate action to enforce the March 2004 grand jury subpoena. Second, the court found that the removal of the 2004 subpoena enforcement proceedings was not time-barred under 28 U.S.C. § 1446 because, although the subpoena was issued on March 5 and Lewis did not remove until May 14, the 30-day window for removal did not begin to run until the Supreme Court of Ohio rejected her request for reconsideration in the first set of proceedings on May 13. Third, the district court concluded that jurisdiction was not barred by the *Rooker-Feldman* doctrine, because the removed proceedings were not a collateral attack on the 2002 contempt order but rather a direct appeal of the effort to enforce the 2004 subpoena.

On April 22, 2004, the district court entered partial judgment for the State, rejecting Lewis's federal defenses. Thereafter, the district court permitted Lewis to withdraw her remaining state law defense, final judgment was entered on June 17, 2005, and Lewis filed a Notice of Appeal on June 30, 2005. On July 29, 2005, this Court granted Lewis's motion to stay the district court's judgment and to enjoin the State from taking further action pending the outcome of her appeal in this Court.

II.

Upon Lewis's removal of the 2004 subpoena enforcement efforts to federal district court, the State filed a timely motion to remand, arguing, *inter alia*, lack of jurisdiction because a final judgment had been entered in state court. The district court denied the State's motion to remand but entered judgment in favor of the State on the merits, and the State does not raise any objections to removal on appeal. Nevertheless, we must *sua sponte* police our own jurisdiction, regardless of whether the parties challenged jurisdiction, and we lack appellate jurisdiction where the district court lacked subject matter jurisdiction. *United States v. Certain Land Situated in City of Detroit*, 361 F.3d 305, 307 (6th Cir. 2004).

We conclude that the district court did not have proper subject matter jurisdiction to hear this matter. Under 28 U.S.C. § 1442, a federal officer may remove a "civil action or criminal prosecution commenced in a State court" against her for any act under color of office. Under the general removal statute at 28 U.S.C. § 1441, "civil action" has long been interpreted to require a separate suit that is not ancillary, incidental, or auxiliary to a suit in state court. *Barrow v. Hunton*, 99 U.S. 80, 82 (1879); *Bank v. Turnbull & Co.*, 83 U.S. (16 Wall.) 190, 193 (1873); *see also* 29A Fed. Proc., L. Ed. § 69:6; 18 A.L.R. Fed. 126. We consider this requirement applicable in the § 1442 context. Although courts have recognized that the meaning of "officer" and "color of office" in § 1442 should be broadly construed to advance the congressional intent of ensuring that federal officers receive the protection of a federal forum, *see Willingham v. Morgan,* 395 U.S. 402, 407 (1969); *Kentucky v. Long,* 837 F.2d 727, 750 (6th Cir. 1988), no court has held that the long-standing rule regarding the meaning of "civil action" under § 1441 has no application in interpreting "civil action" under § 1442. At least one district court has applied the rule against removal of ancillary and incidental proceedings to bar removal in the § 1442 context. *See W. Med. Props. Corp. v. Denver Opportunity, Inc.*, 482 F. Supp. 1205, 1207 (D. Colo. 1980). Lewis's 2004 subpoena enforcement action is clearly ancillary, incidental, or auxiliary to her 2002 contempt proceedings, which she chose to litigate fully in state court, and the objective of ensuring that federal officers need only answer in a federal forum is not advanced by permitting Lewis's belated removal now.

We find that the district court erred in concluding that the expiration of Lewis's first grand jury term and the issuance of a new subpoena resulted in a second "action" removable under § 1442. The hearing to enforce the second subpoena against Lewis could be characterized as a separate proceeding only in the most technical, and trivial, sense: The second subpoena sought the same testimony as the first, and Lewis resisted complying with the subpoena because of the same underlying circumstances. At the time of Lewis's removal, the Supreme Court of Ohio's decision affirming the contempt order had become final and its mandate had issued ordering the lower court to "carry the . . . judgment . . . into execution." Under Ohio's "law of the case" doctrine, an inferior court has no discretion to deviate from the mandate of a superior court in a prior appeal in the same case. *State ex rel. Crandall, Pheils & Wisniewski v. DeCessna*, 652 N.E.2d 742, 744 (Ohio 1995). This doctrine applies when a trial court upon rehearing is "confronted with substantially the same facts and issues as were involved in the prior appeal." *Nolan v. Nolan*, 462 N.E.2d 410, 413 (Ohio 1984). Furthermore, Ohio's doctrine of res judicata bars a defendant from raising in a subsequent proceeding a defense that could have been, but was not, raised in a prior proceeding. *See City of Canton v. Maynard*, 766 F.2d 236, 238 (6th Cir. 1985) (recognizing that Ohio doctrine of res judicata applies to defenses that could have been raised in prior action); *Johnson's Island, Inc. v. Bd. of Twp. Trustees*, 431 N.E.2d 672, 675-76 (Ohio 1982) (same); *O'Nesti v. DeBartolo Realty Corp.*, __ N.E.2d __, 2005 WL 2338633, at *4 (Ohio App. 2005) (demonstrating res judicata applies to defendants as well as plaintiffs); *Packer, Thomas & Co. v. Eyster*, 709 N.E.2d 922, 928 (Ohio App. 1998) (same). Thus, if Lewis's defense against the second subpoena had proceeded in state court, her federal defenses would have been barred by Ohio law, and nothing would have remained of the action but for the state court to enforce the judgment of the Supreme Court of Ohio. We agree with the reasoning of our sister circuits in ruling that when all that remains of an action is the enforcement of a judgment, removal to federal court is not authorized. *See In re Meyerland Co.*, 910 F.2d 1257, 1266 (5th Cir. 1990); *Four Keys Leasing & Maint. Corp. v. Simithis*, 849 F.2d 770, 774 (2d Cir. 1988); *cf. Blue Ox Corp. v. Murphy Oil Corp.*, 524 F. Supp. 1019 (D. Mont. 1981) (holding that litigant waives removal right where two actions arise from same occurrence and first was fully litigated in state court).

Our conclusion is in keeping with federal case law's existing treatment of problems attendant to the expiration and reissuance of grand jury subpoenas. The federal courts have recognized the close relationship between one grand jury term and the next, and generally have not treated the expiration of a grand jury term as a formal termination of legal proceedings. Addressing some of the administrative complexities that may arise from the expiration of one grand jury and the impaneling of a successor grand jury, the Ninth Circuit held that an order of immunity issued during one grand jury term need not be renewed before a witness's testimony could be compelled before a new grand jury, and that the court need not issue a new order compelling the witness's testimony before the new grand jury. *See In re Weir*, 520 F.2d 662, 665-66 (9th Cir. 1975). Likewise, the Fifth Circuit has concluded that a subpoena issued by one grand jury may be served prior to impaneling the second grand jury, *see United States v. Stevens*, 510 F.2d 1101, 1106 (5th Cir. 1975), and the Tenth Circuit has concluded that a subpoena issued by one grand jury may be used to obtain evidence for a second grand jury, *see In re Grand Jury Proceedings*, 658 F.2d 782, 783 (10th Cir. 1981). Similarly, the Supreme Court has recognized that while a civil contempt order cannot impose a sentence that extends "beyond the cessation of the grand jury's inquiry . . . ," "[b]y the same token, the sentence of imprisonment may be continued or reimposed if the witnesses adhere to their refusal to testify before a successor grand jury." *Shillitani v. United States*, 384 U.S. 364, 371 & n.8 (1966).

Our conclusion is further compelled by the fact that Lewis's belated efforts to remove the subpoena enforcement actions offend the "spirit of the removal acts, which do not contemplate that a party may experiment on [her] case in state court, and, upon an adverse decision, then transfer it to Federal court." *Rosenthal v. Coates*, 148 U.S. 142, 147 (1893). By litigating the merits of her defense against the contempt order to the highest state court, receiving an adverse judgment, moving for reconsideration, and petitioning the Supreme Court of the United States for *certiorari*, Lewis had clearly chosen a state forum. In Lewis's first round of appeal, she challenged the court's interpretation regarding what Ohio privilege law required her to do. Now, with the advantage of knowing the outcome of the state law questions regarding Ohio's statutory scheme, Lewis seeks to raise new defenses as to why the law, thus interpreted, should not apply

to her. Such piecemeal litigation offends the spirit of the removal statutes and undermines judicial economy. Treating Lewis's nearly-identical second subpoena enforcement as a separate action for purposes of removal would create a bizarre and unjust result: an opportunity to relitigate in a new forum an already failed effort to resist compliance that would be procedurally barred in state court.

We reach this conclusion despite the fact that the federal defenses Lewis now raises were not brought before the state court. While the defendant's reliance on a new defense theory upon removal may resolve *Rooker-Feldman* concerns, it cannot reopen a judgment and therefore does not create subject matter jurisdiction. To permit Lewis to remove now simply because she raises new defenses would amount to Lewis receiving a windfall from her failure to exhaust her federal claims in state court. Practically speaking, Lewis seeks a collateral review to set aside the prior judgment that would be procedurally barred under proper collateral appeal procedures.

We are not persuaded by the argument, made by Lewis in district court, that her federal defenses were not "ripe" for review until the state court determined that the state statute applied to compel her testimony. The issue in Lewis's contempt proceedings has always been her refusal to testify in state court based upon her assertion of attorney-client privilege, and nothing prevented Lewis from raising her current federal defenses regarding that issue in state court. Instead, Lewis chose to wait to bring her federal defenses until she saw how her state law defenses fared. Lewis's argument to the district court that she could not have anticipated the state court's interpretation of the Ohio statute is essentially an argument that she did not expect to lose on her state law defenses. Her expectation that she would not need to rely on her federal defenses is no excuse for her failing to raise them.

Having had her day in court, Lewis seeks to profit from outrunning her first state court contempt order by raising federal arguments that she failed to raise when she had the chance. Lewis "has experimented with the state courts and been beaten, and now seeks a different forum." *Rosenthal*, 148 U.S. at 147. Section 1442(a) of the removal statutes does not confer federal jurisdiction for such purposes.

III.

The judgment of the district court is vacated, and the case remanded to state court for further proceedings.