[No. 40340.    En Banc.    May 20, 1970.]

*In the Matter of Contempt Proceedings of* THELMA SALVESEN.

THE SUPERIOR COURT FOR KING COUNTY, *Respondent*, v. THELMA SALVESEN, *Appellant.**

*Reported in 469 P.2d 898.

*Edward Heavey,* for appellant.

*Charles O. Carroll, Donald D. Skinner,* and *Barbara Durham,* for respondent.

WEAVER, J.—Appellant Thelma Salvesen makes one assignment of error:[1]

The trial court erred in finding that the appellant had committed contempt *in the immediate view and presence of the court.* [Italics ours.]

It is not argued that Miss Salvesen's conduct was not within the ambit of contempt of court; it is urged that the contempt was not committed "in the immediate view and presence of the court or officer" (RCW 7.20.030); hence, the court, not having followed the proper procedure, did not have jurisdiction to enter the order of contempt from which this appeal is prosecuted.

The legislature has established two categories of contempt proceedings in this jurisdiction:[2]

(1) *Criminal contempt* proceedings are prosecuted by the state, pursuant to RCW 9.23.010, which lists eight particular acts that are punished as misdemeanors. Criminal contempt is directed against the power and dignity of the court. The purpose of the statute is punitive. The accused is entitled to a jury trial.

---

[1]In her notice of appeal, appellant states four grounds upon which the appeal is based. No error is assigned to three of them; they are not argued in appellant's brief. We are precluded from considering them. ROA 43; *Schorzman v. Kelly,* 71 Wn.2d 457, 429 P.2d 217 (1967).

[2]This case does not involve a third category of contempt proceedings —the inherent power of a constitutional court to enforce its orders and judgments and to punish for contempt for disobedience of its mandates.

(2) *Civil contempt* is defined in 12 sections of RCW 7.20.010. We are concerned with only one section:

Disobedience of a subpoena duly served, or *refusing to be sworn or answer as a witness.* RCW 7.20.010 (10). [Italics ours.]

■ Although the proceedings under RCW 7.20 may be both coercive and punitive because incarceration can result, the main thrust of the chapter is to coerce rather than punish.

In *Shillitani v. United States,* 384 U.S. 364, 16 L. Ed. 2d 622, 86 S. Ct. 1531 (1966), the court said:

While any imprisonment, of course, has punitive and deterrent effects, it must be viewed as remedial if the court conditions release upon the contemnor's willingness to testify.

Our civil contempt statute provides:

When a contempt is committed in the immediate view and presence of the court or officer, it may be punished summarily, for which an order must be made reciting the facts as occurring in such immediate view and presence, determining that the person proceeded against is thereby guilty of contempt, and that he be punished as therein prescribed. [RCW 7.20.030.]

It is not the fact of punishment, but rather its character and purpose, that distinguishes civil from criminal contempt. The former does not result in a criminal record. The primary purpose of the instant proceeding was not to punish Miss Salvesen but to coerce her to testify before the grand jury and thus aid it in its investigation.

With this sketch of the applicable law, more fully discussed in *Keller v. Keller,* 52 Wn.2d 84, 323 P.2d 231, we turn to the facts; they are simple and undisputed.

Pursuant to a subpoena to appear and testify before a grand jury of King County on April 5, 1966, Thelma Salvesen refused to enter the grand jury room unless accompanied by her counsel.[3]

The next morning at 9 a.m., she again refused to enter

---

[3] Laws of 1967, ch. 130, § 1 (RCW 10.28.075) now permits a witness to be accompanied in the grand jury room by counsel to advise him.

the grand jury room. At 11:30 a.m., her counsel appeared before William J. Wilkins, presiding judge of the superior court, and presented extensive legal argument in support of Miss Salvesen's position. No relief was granted, and she was ordered to report at 1:30 p.m.

At 1:30 p.m., she again refused to enter the room while the grand jury was in secret session. Judge Wilkins was called. He presided over an *open* session of the grand jury. Miss Salvesen, her counsel, and all jurors were present.

The presiding judge was meticulous in his explanation and instructions to Miss Salvesen. We need not repeat them, except to point out that she was informed she had the right to refuse to answer any question she felt might incriminate her and that she might ask leave to consult further with her counsel. Miss Salvesen stated she understood the instructions.

Once, Miss Salvesen told the court, "I do not wish to testify." On two occasions she stated that she refused to testify. The following is the final confrontation of this session of court:

The Court: . . . I am instructing you— Miss Salvesen: (Interposing) You are instructing me to testify? The Court: Yes. Miss Salvesen: I refuse to testify.

The judge left the room and the grand jury convened in *secret* session. The statement of facts contains a stenographic report of Miss Salvesen's four refusals to be sworn and testify before the grand jury. The presiding judge was recalled and the grand jury was again convened in *open* session.

Miss Salvesen told the court she *had* refused to be sworn and testify before the grand jury. Upon inquiry, she told the court that her refusal was "still my position"; "it remains my position, sir"; and should the judge retire from the grand jury room, it would make no difference in her refusal to be sworn and testify. She said, "it would remain my position."

Stating that he had no alternative, the court found Miss Salvesen guilty of contempt of court committed in his presence in violation of the civil contempt statutes of this state.

The order entered complies with RCW 7.20.030, *supra*. The judge sentenced her to 30 days in the county jail and fined her $100, stating, however, that:

> She may at any time [purge herself of contempt] if she desires to come in and be sworn and respond to the subpoena and then proceed to answer questions, the answers to which would not be apt to incriminate her.

Miss Salvesen spent 2 days in jail. April 8, 1966, she was released upon her personal recognizance. April 9, she was excused by the grand jury from testifying before it; her testimony was no longer deemed necessary. April 11, the court entered an order remitting the $100 fine and canceling the sentence of imprisonment.

The question before us is a narrow one as defined by the assignment of error. It is not disputed that Miss Salvesen's refusal to testify was contemptuous under the statute. The sole question is whether her contemptuous conduct occurred in the presence of the court. Did it occur when she refused to be sworn and testify in secret session of the grand jury when the judge could not be present by reason of the statute, or did it occur when, in open court, she told the court (1) that she had refused to be sworn and testify before the grand jury contrary to the court's previous instruction; (2) that refusal to testify was still her position and (3) that her refusal to testify would remain her position.

The statement made to the court in the course of the hearing that if she again went before the grand jury she would again refuse to be sworn and testify amounts to a reiteration of her blanket refusal to answer any questions asked by the grand jury.

She stood before a judge having jurisdiction and said: "I have not done what you ordered me to do; it is my present decision that I will not do what you ordered me to do, and under any change of circumstances, I will *not* comply with the court's mandate."

Thus, it is apparent that Miss Salvesen stated, in the presence of the court, without condition or qualification, that she refused to answer any questions.

■ Had she stood mute before the court, an entirely different situation would be presented. It is the act of defiance, however, in refusing to be sworn and answer any question that might be asked of her, in the presence of the court, that forms the basis for the order of contempt.

If this is not contempt *in the presence* of a court of this jurisdiction, our judicial system has suffered a setback. See *Smaldone v. People*, 158 Colo. 7, 405 P.2d 208 (1965).

Appellant relies heavily upon *Harris v. United States*, 382 U.S. 162, 15 L. Ed. 2d 240, 86 S. Ct. 352 (1965). *Harris* is an interpretation by the United States Supreme Court of Rule 42(a) and (b) of the Federal Rules of *Criminal* Procedure. Appellant had been adjudged guilty of criminal contempt and sentenced to 1 year's imprisonment for his refusal to testify before a grand jury upon the ground of privilege. The conviction was summary for criminal contempt committed "in the actual presence of the court," as provided in Rule 42(a).

The majority opinion (it is a 5-4 decision) held that Rule 42(a) "was reserved 'for exceptional circumstances,' . . . such as acts threatening the judge or disrupting a hearing or obstructing court proceedings." The facts of *Harris* did not meet this test, and the case was remanded for proceedings under Rule 42(b). The court stated it was concerned solely with "procedural regularity." No constitutional question was discussed.

In *State v. Nicoll*, 40 Wash. 517, 524, 82 P. 895 (1905), this court said:

> A party charged with contempt has the same right to be heard in his defense as a party charged with any other offense where life, liberty, or property is involved. Contempt proceedings, however, are summary in their nature, and the extent of the hearing, so far as it relates to questions of law alone, rests within the sound discretion of the court. The sole defense relied on by the appellants was a lack of jurisdiction in the court to grant the order which they had confessedly violated.

■ There is no dispute of fact in the instant case; there is only a question of law as in *Nicoll*. This being the case,

the court pointed out in *State v. Hatten,* 70 Wn.2d 618, 622, 425 P.2d 7 (1967), that since the question of law was correctly decided, it was of no significance whether the court had arrived at its decision summarily or after a painstaking investigation.

The judgment is affirmed.

HUNTER, C. J., HAMILTON, HALE, NEILL, and McGOVERN, JJ., concur.

ROSELLINI, J. (dissenting)—The appellant's punishment has been remitted. Since she was not found guilty of criminal contempt, the citation does not give her a criminal record. Any decision by this court sustaining the appellant's contention would be of no use to her. The controversy has ended.

A moot case is one which seeks to determine an abstract question which does not rest upon existing facts or rights. *Hansen v. West Coast Wholesale Drug Co.,* 47 Wn.2d 825, 289 P.2d 718 (1955). I see no compelling reason to take jurisdiction of this moot case.

Furthermore, the question decided by the majority was never properly raised in the trial court. The appellant admitted in open court that she had refused to testify. She did not request an opportunity to present further evidence to that court. Consequently, any right which she may have had to a further hearing was waived. *State v. Hatten,* 70 Wn.2d 618, 425 P.2d 7 (1967).

I would dismiss the appeal.

FINLEY, J., concurs with ROSELLINI, J.