301 S.E.2d 581

**In re Robert M. YOHO.**

**No. 15632.**

Supreme Court of Appeals of West Virginia.

March 25, 1983.

Gary L. Rymer, Middlebourne, for appellant.

Silas B. Taylor, Asst. Atty. Gen., Charleston, for appellee.

HARSHBARGER, Justice:

When Robert "Buddy" Yoho was indicted for two drug violations, he bargained to plead guilty to a marijuana offense in exchange for a state recommendation that he be incarcerated in a youth correctional center and that an LSD charge be nolle prossed. During plea negotiations the state offered to nolle both if he would voluntarily testify about his drug sources, but he refused. He was sentenced for his marijuana offense in accord with the plea agreement, and at his sentencing he received a subpoena to testify before a grand jury.

Yoho appeared before the Wetzel County Grand Jury, but exercised his Fifth Amendment privilege against self-incrimination. The prosecuting attorney brought him to the circuit judge who granted him immunity from prosecution. W.Va.Code, 57–5–2.[1] Yoho reiterated his refusal to testify: he feared that he and his family would be harmed. He was warned that his refusal was contempt of court and could result in his incarceration. He acknowledged this, but maintained his refusal. The court sentenced him "to confinement in the Wetzel County Jail until such time as he may elect to testify before the Grand Jury." A stay was granted pending this appeal.

## I.

■ Yoho refused to testify because he feared for his life and the lives and safety

---

**1.** We have discussed the scope of this immunity in *State ex rel. Brown v. MacQueen,* 169 W.Va. 56, 285 S.E.2d 486 (1981). After Yoho was granted immunity, he had no reason to invoke his Fifth Amendment privilege. His immunity was coextensive with his state and federal rights.

of his family. Fear of harm to one's safety cannot justify a refusal to testify before a grand jury. If fear of reprisal justified such refusal criminals would be encouraged to silence potential witnesses by threats and violence, and the truth-finding process would be corrupted.

In 1961 the United States Supreme Court rejected a fear-of-reprisal refusal to testify. *Piemonte v. United States*, 367 U.S. 556, 81 S.Ct. 1720, 6 L.Ed.2d 1028. *Accord, In re Farrell*, 611 F.2d 923 (1st Cir.1979); *United States v. Doe*, 478 F.2d 194 (1st Cir.1973); *United States v. Dien*, 598 F.2d 743 (2d Cir.1979); *In re Kilgo*, 484 F.2d 1215 (4th Cir.1973); *In re Grand Jury Proceedings*, 605 F.2d 750 (5th Cir.1979); *In re Grand Jury Proceedings*, 509 F.2d 1349 (5th Cir.1975); *United States v. Damiano*, 579 F.2d 1001 (6th Cir.1978); *In re Long Visitor*, 523 F.2d 443, 447-8 (8th Cir. 1975); *LaTona v. United States*, 449 F.2d 121, 122 (8th Cir.1971); *Dupuy v. United States*, 518 F.2d 1295 (9th Cir.1975).

## II.

■■■■ Refusal to testify to a grand jury after a grant of immunity and a court order to do so constitutes contempt of court. 17 Am.Jur.2d, *Contempt* § 30; 38 C.J.S., *Grand Juries*, § 41(d)(2). There are four kinds of contempt: direct-criminal, indirect-criminal, direct-civil, and indirect-civil. *State ex rel. Robinson v. Michael*, 166 W.Va. 660, 276 S.E.2d 812, 817, fn. 9 (1981).

■■■■ The United States Supreme Court has decided that refusal to testify before a grand jury, even if the refusal is repeated to a judge, is not a direct contempt [2] that warrants summary disposition. *Harris v. United States*, 382 U.S. 162, 86 S.Ct. 352, 15 L.Ed.2d 240 (1965). Harris was criminally prosecuted for contempt, and the court discussed the applicability of Federal Criminal Procedure Rule 42. The court stated:

Cases of the kind involved here are foreign to Rule 42(a). The real contempt, if such there was, was contempt before the grand jury—the refusal to answer to it when directed by the court. Swearing the witness and repeating the questions before the judge was an effort to have the refusal to testify "committed in the actual presence of the court" for the purposes of Rule 42(a). It served no other purpose, for the witness had been adamant and had made his position known. The appearance before the District Court was not a new and different proceeding, unrelated to the other. It was ancillary to the grand jury hearing and designed as an aid to it. *Id.*, 382 U.S., at 164–165, 86 S.Ct., at 354, 15 L.Ed.2d, at 242.

In *United States v. Wilson*, 421 U.S. 309, 95 S.Ct. 1802, 44 L.Ed.2d 186 (1975), the court dealt with criminal contempt proceedings against a witness who refused to testify at a trial, and sanctioned use of the Rule 42(a) summary contempt power against an immunized witness who still refused to testify. *Harris* was distinguished: its rule proscribing summary contempt proceedings for recalcitrant grand jury witnesses remains. The *Wilson* court emphasized the differences between grand jury investigations and trials.

Several courts have agreed with the Supreme Court and determined that grand jury witnesses' refusals to testify were indirect contempts, not "in the presence of the court" and therefore, summary disposition was erroneous. *Pendley v. State*, 392 So.2d 321 (Fla.Dist.Ct.App.1980), *reh. denied; State v. Roll*, 267 Md. 714, 298 A.2d 867, 69 A.L.R.3d 483 (1973); *Ex Parte Hedden*, 29 Nev. 352, 90 P. 737 (1907). *See* Annot., Refusal to Answer Questions Before State Grand Jury as Direct Contempt of Court, 69 A.L.R.3d 501 (1976).

Other courts have held that these are direct contempts. *Ex parte Morris*, 252

---

**2.** A direct contempt is one committed in the actual presence of the court. *State ex rel. Koppers Co. v. International Union of Oil, Chemical and Atomic Workers*, 171 W.Va. 290, 298 S.E.2d 827, 829 (1982). An indirect, or constructive, contempt is not viewed by the court and requires a party to come before the court with

sworn testimony attesting to its existence. It can only be established by extrinsic evidence, must be instituted by information or citation or rule to show cause and the contemnor is entitled to a hearing. *Smoot v. Dingess*, 160 W.Va. 558, 236 S.E.2d 468 (1977).

Ala. 551, 42 So.2d 17 (1949); *People v. Lucero*, 196 Colo. 276, 584 P.2d 1208 (1978); *Smaldone v. People*, 158 Colo. 7, 12, 405 P.2d 208, 211 (1965), *cert. denied*, 382 U.S. 1012, 86 S.Ct. 616, 15 L.Ed.2d 527 (1966); *Re Grand Jury*, 17 Hawaii 336 (1906); *People v. Burkert*, 7 Ill.2d 506, 131 N.E.2d 495 (1955); *Young v. Knight*, 329 S.W.2d 195, 77 A.L.R.2d 994 (Ky.1959); *State v. Rodrigues*, 219 La. 217, 52 So.2d 756 (1951); *Gendron v. Burnham*, 146 Me. 387, 82 A.2d 773, 38 A.L.R.2d 210 (1951); *In re Boyd*, 36 N.J. 285, 176 A.2d 793 (1962); *State v. Granchay*, 1 Ohio App.2d 307, 30 Ohio Ops.2d 310, 204 N.E.2d 562 (1964); *Padgett v. Graham*, Okl.Cr. 516 P.2d 1375 (1973); *Re Petition of Start*, 186 Pa.Super. 509, 142 A.2d 449 (1958); *In Matter of Salvesen*, 78 Wash.2d 41, 469 P.2d 898 (1970).

■ We believe an unjustified refusal to testify with immunity before a grand jury, after being ordered by a court to do so, and

a face-to-face reiteration to that court of the refusal, is a *direct* contempt. This contempt could not even occur except "in the presence of the court," which is acting to aid, as is a grand jury, in finding truth.

Is this civil or criminal contempt? A refusal to testify before a grand jury may be either, or both.[3] The federal court system has a Recalcitrant Witness Statute, 28 U.S.C.A. § 1826, defining procedures for civil contempt sanctions against grand jury witnesses who refuse to testify,[4] and Federal Rule of Criminal Procedure 42 for criminal contempt sanctions. As we noted earlier, *Harris v. United States* makes procedures in subsection (b) of Rule 42, requiring explicit procedural guarantees, and not subsection (a) permitting summary disposition,[5] applicable to contumacious grand jury witnesses.

In West Virginia, criminal contempts are governed by both W.Va. Rules of Criminal Procedure, Rule 42[6] and Code, 61–5–26,[7]

**3.** *United States v. North*, 621 F.2d 1255 (3d Cir. 1980), *en banc* (1980), *cert. denied*, 449 U.S. 866, 101 S.Ct. 199, 66 L.Ed.2d 84; *In re Before the Third Statewide Grand Jury*, 360 So.2d 4 (Fla. Dist.Ct.App.1978), *reh. denied; People v. Johns*, 384 Mich. 325, 183 N.W.2d 216, 218 (1971); *In re November, 1975 Special Investigating Grand Jury*, 475 Pa. 123, 379 A.2d 1313 (1977), *reh. denied, cert. denied*, 436 U.S. 922, 98 S.Ct. 2274, 56 L.Ed.2d 765 (1978).

**4.** *See* Berman, Coercive Contempt and the Federal Grand Jury, 79 Columbia L.Rev. 735 (1979); Annot., Grand Jury Witness' Right to Hearing Before Summary Commitment for Contempt Under Recalcitrant Witness Statute (28 U.S.C.S. § 1826(a)), 37 A.L.R. Fed. 875.

**5.** Re: summary contempt power, *see* Kuhns, The Summary Contempt Power: A Critique and a New Perspective, 88 Yale Law J. 39 (1978); Sedler, The Summary Contempt Power and the Constitution: The View from Without and Within, 51 N.Y.U.L.Rev. 34 (1976); Dobbs, Contempt of Court: A Survey, 56 Cornell L.Rev. 183, 221 (1971).

**6.** W.Va. Rules of Criminal Procedure, Rule 42:

"(a) *Summary Disposition.*—A judge may cause an immediate arrest for a criminal contempt committed in his presence and remand the person to jail pending preparation of an appropriate warrant or notice of contempt. Persons so arrested shall be entitled to bail pending the ultimate disposition of the charge,

which shall be accomplished pursuant to the provisions of subsection (b).

"(b) *Disposition upon Notice and Hearing.*—A criminal contempt, except where summary disposition is permissible, shall be prosecuted on notice. The notice shall state the time and place of hearing, allowing a reasonable time for the preparation of the defense, and shall state the essential facts constituting the criminal contempt charged and describe it as such. The notice shall be given orally by the judge in open court in the presence of the defendant or, on application of the prosecuting attorney or of an attorney appointed by the court for that purpose, by an order to show cause or an order of arrest. The defendant is entitled to a trial by jury in any case in which the laws of this state so provide. He is entitled to admission to bail as provided in these rules. If the contempt charged involves disrespect to or criticism of a judge, that judge is disqualified from presiding at the trial or hearing except with the defendant's consent. Upon a verdict or finding of guilt, the court shall enter an order fixing the punishment."

**7.** W.Va.Code, 61–5–26:

"The courts and the judges thereof may issue attachment for contempt and punish them summarily only in the following cases: (a) Misbehavior in the presence of the court, or so near thereto as to obstruct or interrupt the administration of justice; (b) violence or threats of violence to a judge or officer of the court, or to a juror, witness, or party going to, attending or returning from the court, for or in respect of any act or proceeding had, or to be had, in such

and civil contempts by W.Va.Code, 57–5–6.[8]

1. Whether a contempt is classified as civil or criminal does not depend upon the act constituting such contempt because such act may provide the basis for either a civil or criminal contempt action. Instead, whether a contempt is civil or criminal depends upon the purpose to be served by imposing a sanction for the contempt and such purpose also determines the type of sanction which is appropriate.[9]

2. Where the purpose to be served by imposing a sanction for contempt is to compel compliance with a court order by the contemner so as to benefit the party bringing the contempt action by enforcing, protecting, or assuring the right of that party under the order, the contempt is civil.[10]

3. The appropriate sanction in a civil contempt case is an order that incarcerates a contemner for an indefinite term and that also specifies a reasonable manner in which the contempt may be purged thereby securing the immediate release of the contemner, or an order requiring the payment of a fine in the nature of compensation or damages to the party aggrieved by the failure of the contemner to comply with the order. Syllabus Points 1, 2 and 3, *State ex rel. Robinson v. Michael, supra.*

This trial court ordered that Yoho be incarcerated until he testified. He could purge himself of this contempt and avoid incarceration. He was being coerced, not punished. The court correctly treated Yoho's refusal to be a civil contempt.[11]

Yoho complains that he was denied due process in his contempt adjudication.

What due process standards are required for direct civil contempts? We stated in *Chesapeake & Ohio System Federation, Brotherhood of Maintenance of Way Employees v. Hash*, 170 W.Va. 294, 294 S.E.2d 96, 101 (1982):

[An] alleged contemnor is subject to incarceration or fine if he is found guilty of the contempt and is therefore entitled to certain fundamental procedural safeguards to insure that he is not deprived of his liberty or property without due process of law. The most basic of the

---

8. W.Va.Code, 57–5–6:

"If a person, after being served with such summons, shall attend and yet refuse to be sworn, or to give evidence, or to produce any writing or document required, he may by order of the court whose clerk issued said summons, or of the person before whom he was summoned to attend, be committed to jail, there to remain until he shall, in custody of the jailer, give such evidence or produce such writing or document."

court; (c) misbehavior of an officer of the court, in his official character; (d) *disobedience to or resistance of any officer of the court, juror, witness, or other person, to any lawful process, judgment, decree or order of the said court.* No court shall, without a jury, for any such contempt as is mentioned in subdivision (a) of this section, impose a fine exceeding fifty dollars, or imprison more than ten days. But in any such case the court may impanel a jury (without an indictment or any formal pleading) to ascertain the fine or imprisonment proper to be inflicted, and may give judgment according to the verdict. No court shall impose a fine for contempt, unless the defendant be present in court, or shall have been served with a rule of the court to show cause, on some certain day, and shall have failed to appear and show cause." (Emphasis ours.)

9. It has been suggested that civil contempts encompass refusals to do that which is ordered, while criminal contempts consist of doing that which is prohibited. *Shillitani v. United States*, 384 U.S. 364, 86 S.Ct. 1531, 16 L.Ed.2d 622 (1966). This test may aid in determining the appropriate sanction, but West Virginia still focuses on the nature of the sanction for a final determination of the type of contempt.

10. Berman, 79 Columbia L.Rev. at 737, *supra* at Fn. 4, suggests civil contempts are subdivided into remedial civil contempts to compensate an injured party litigant and coercive civil contempts to compel compliance with an order that benefits a party.

11. The United States Supreme Court has recommended that civil sanctions to coerce testimony, if feasible, be attempted prior to resort to criminal ones. *Shillitani v. United States*, 384 U.S. 364, 371, n. 9, 86 S.Ct. 1531, 1536, n. 9, 16 L.Ed.2d 622 (1966). *Accord, United States v. Doe*, 295 F.Supp. 956 (D.Conn.), *aff'd.* 405 F.2d 436 (2d Cir.1967); *In re Martorano*, 464 Pa. 66, 77, 346 A.2d 22, 27–28 (1975). *But see United States v. DiMauro*, 441 F.2d 428, 435 (8th Cir. 1971). This follows the principle that contempts should be managed by "[t]he least possible power adequate to the end proposed." *United States v. Wilson*, 421 U.S., at 319, 95 S.Ct., at 1808, 44 L.Ed.2d, at 194.

procedural safeguards guaranteed by the due process provisions of our state and federal constitutions are *notice* and the *opportunity to be heard,* which are essential to the jurisdiction of the court in any pending proceeding. *State ex rel. Staley v. Hereford,* 131 W.Va. 84, 45 S.E.2d 738 (1947). (Emphasis supplied). We also recognized in *Eastern Associated Coal Corp. v. Doe,* 159 W.Va. 200, 220 S.E.2d 672, 681 (1975):

> In other words, whenever a defendant in a contempt proceeding 'has the keys to the jail in his own pocket,' *In re Nevitt,* 117 F. 448 (8th Cir.1902), and may release himself from jail by performing such act or acts as the court directs, the contempt is civil in nature.

The Colorado Supreme Court unanimously ruled that an immunized witness' refusal to testify after being brought before a court was a direct civil contempt for which a separate, delayed hearing was purposeless. That court reasoned:

> An examination of the underlying purpose for our contempt of court procedures is of value in distinguishing between the two types of contempt proceedings. The underlying rationale for the distinction is that in those cases where the judge did not personally observe the contemptuous conduct, a hearing is necessary to find the facts. The hearing enables the judge to ascertain the facts of the occurrence and permits the defendant to explain his behavior and offer evidence to mitigate the penalty.... Where, however, the judge is aware of the contemptuous conduct from personal observation, where no lawful justification exists for the contemptuous behavior, and where the penalty is not of the type that can be mitigated by any evidence offered, we fail to see what purpose would be served by a full-fledged evidentiary hearing. In such circumstances, summary procedure, as followed in this case, is appropriate. *People v. Lucero,* 196 Colo. 276, 584 P.2d 1208, 1212–13 (1978) (footnote omitted).

In *Petition of Specter,* 439 Pa. 404, 268 A.2d 104 (1970), *reh. denied,* the Pennsylvania Supreme Court permitted a contempt hearing immediately after an immunized witness' refusal to testify. The Commonwealth produced evidence that this witness was recalcitrant and the court offered him an opportunity to purge himself. This procedure met the witness' due process hearing right. *Id.,* 268 A.2d, at 116. Yoho had the same opportunity.

Washington's Supreme Court also decided that an elaborate hearing is not required for a direct civil contempt. A summary civil contempt proceeding for refusal to testify after being ordered to do so is permissible because the sole issue is one of law:

> In *State v. Nicoll,* 40 Wash. 517, 524, 82 P. 895, 896 (1905), this court said:
> A party charged with contempt has the same right to be heard in his defense as a party charged with any other offense where life, liberty, or property is involved. Contempt proceedings, however, are summary in their nature, and the extent of the hearing, so far as it relates to questions of law alone, rests within the sound discretion of the court. The sole defense relied on by the appellants was a lack of jurisdiction in the court to grant the order which they had confessedly violated.
> There is no dispute of fact in the instant case; there is only a question of law as in *Nicoll.* This being the case, the court pointed out in *State v. Hatten,* 70 Wash.2d 618, 622, 425 P.2d 7 (1967), that since the question of law was correctly decided, it was of no significance whether the court had arrived at its decision summarily or after a painstaking investigation. *In Matter of Salvesen,* 78 Wash.2d 41, 469 P.2d 898, 902 (1970), *en banc.*

The First Circuit Court of Appeals recognized that civil contempt proceedings for recalcitrant grand jury witnesses, pursuant to 28 U.S.C. § 1826, do "not require meaningless formalities that would only serve to delay the proceedings." *In re Bianchi,* 542 F.2d 98 (1st Cir.1976). *Accord In re Farrell,* 611 F.2d 923, 925 (1st Cir.1979).

We believe Yoho's due process rights were adequately protected. *Smoot*

*v. Dingess,* 160 W.Va. 558, 236 S.E.2d 468, 471 (1977). Yoho was informed prior to his refusal to testify and again after it, that his actions were contemptuous. He was present with his counsel and had an opportunity to be heard. A stenographic record was prepared. The trial court made its decision on competent evidence—actions committed in his presence and defendant's testimony. A delay to hold a plenary hearing was not requested by his lawyer.[12] In addition, we cannot perceive any evidence that could have been introduced at a later hearing that was not available when this contemnor was sentenced.[13]

Finally, we note a civil contempt sanction is inappropriate where a defendant has no ability to purge himself. *Hendershot v. Hendershot,* 164 W.Va. 190, 263 S.E.2d 90, 97, and Footnote 14 (1980); *Floyd v. Watson,* 163 W.Va. 65, 254 S.E.2d 687, 692 (1979). A civil contempt sentence for a grand jury witness' refusal to testify must cease when the witness purges himself by testifying or at the end of the grand jury's term. *Shillitani v. United States, supra; In re Citizens Grand Jury Proceedings,* 78 Mich.App. 402, 259 N.W.2d 887, 889, footnote 3 (1977); *People v. Johns,* 384 Mich. 325, 183 N.W.2d 216, 220 (1971); *State v. Granchay, supra; see also* federal rule in 28 U.S.C.A. § 1826. W.Va. Code, 57–5–6, in footnote 8, *supra,* must be understood to limit the period of confinement for those civil contempts until the end of trial or grand jury term.

Affirmed.

---

**12.** Failure to request a hearing or bring this matter before the trial court is fatal to this appellate argument. *State v. Moran,* 168 W.Va. 688, 285 S.E.2d 450, 453 (1981); *State v. Church,* 168 W.Va. 408, 284 S.E.2d 897 (1981). *See also State v. Baker,* 163 W.Va. 65, 287 S.E.2d 497, 500 (1982); *Floyd v. Watson,* 163 W.Va. 65, 254 S.E.2d 687 (1979). If defendant had requested a plenary hearing and asserted "just cause" for his recalcitrance, requiring further research or the taking of evidence, we might view his claim differently.

**13.** Fear of reprisal has occasionally been recognized as a mitigating factor in criminal con-

tempt sentences, *Harris v. United States, supra,* 382 U.S., at 166, 86 S.Ct., at 355 (dicta); *United States v. Gomez,* 553 F.2d 958 (5th Cir.1977); *United States v. Patrick,* 542 F.2d 381, 388 (7th Cir.1976), *cert. denied,* 430 U.S. 931, 97 S.Ct. 1551, 51 L.Ed.2d 775 (1977). *In re Grand Jury Proceedings,* 605 F.2d 750, 752 (5th Cir.1979); but since a civil contempt sanction is intended to coerce and not punish, mitigation is not an issue. Anyway, the court was fully apprised of Yoho's reasons for refusing to testify, and was able to take his fear into consideration.