IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

DIVISION THREE

| | | |
|---|---|---|
| EVARISTO JAVIER SANCHEZ, | ) | No. 36279-5-III |
| | ) | |
| Appellant, | ) | |
| | ) | |
| v. | ) | PUBLISHED OPINION |
| | ) | |
| HOPE V. ROSE, | ) | |
| | ) | |
| Respondent. | ) | |

PENNELL, A.C.J. — Washington's judges have statutory authority to control their courtrooms by summarily sanctioning individuals for direct contempt. This is an awesome power, carrying the potential for incarceration and fines with few procedural protections. As such, it must be exercised with restraint. Summary contempt is available only when a judge is a direct witness to an act of contempt. Simply receiving evidence of contempt is insufficient.

Here, the superior court held Evaristo Sanchez in contempt after Mr. Sanchez admitted noncompliance with prior court orders. This was not an act of direct contempt, occurring in open court; it was merely an admission of prior contempt. As such, the superior court lacked statutory authority to impose summary contempt sanctions. The order of contempt is reversed and vacated.

FACTS

The hearings in Benton County Superior Court leading to this appeal were

conducted by three different judges and span two separate causes of action.[1]

On July 3, 2018, Evaristo Sanchez petitioned for an order of protection against his wife, Hope Rose. A temporary order was issued and a full hearing on the petition was scheduled for July 13.

On July 10, 2018, Ms. Rose petitioned for dissolution of marriage. The next day, she obtained a temporary order in the dissolution action. The order required, among other things, that Mr. Sanchez remit a support payment of $5,000, and another $5,000 in attorney fees. The support payment was to be made by the close of business on the date of service. The attorney fee payment was due by July 13. There is no proof of service of the temporary order in the record on review, although Mr. Sanchez later averred he was served with the order on July 12, at approximately 5:15 p.m. Up to this point, the same judge handled all matters between Ms. Rose and Mr. Sanchez.

On July 13, a second judge held a hearing in the protective order proceeding. Both Mr. Sanchez and Ms. Rose were present. Another temporary order was issued and a full hearing rescheduled for July 20. The July 13 temporary order noted Ms. Rose was to be granted access to the family home to obtain clothing, personal items, a horse trailer and a

---

[1] The protective order proceeding was filed under cause number 18-2-1678-03, and the dissolution action was filed under cause number 18-3-0058-03.

truck to the trailer. The July 13 hearing included a discussion of the $10,000 in payments that had been ordered in the dissolution action. Mr. Sanchez represented he would make the payments by the close of business.

On July 16, Ms. Rose filed a motion for contempt in the dissolution proceeding. She alleged Mr. Sanchez had neither made any of the required payments nor allowed her access to the home to retrieve her personal and other items. Ms. Rose requested the court impose punitive and remedial sanctions. The record does not reveal whether the motion was served on Mr. Sanchez. Mr. Sanchez did not file a written response. There is no notice of hearing in the record on review.

The parties appeared on July 20 for the previously scheduled protective order hearing. A third judicial officer presided over the hearing. The court began by asking Mr. Sanchez if he had paid the $10,000 previously ordered in the dissolution action. Mr. Sanchez stated he had not. The court then ruled Mr. Sanchez was in summary contempt, pursuant to RCW 7.21.050.[2] The court certified it had "seen or heard" the acts constituting contempt by virtue of the statements made in open court. Report of Proceedings at 14. The court also indicated it had listened to a recording of the July 13

___

[2] In addition to the failure to pay, the court held Mr. Sanchez in contempt for failing to allow Ms. Rose access to the home to retrieve personal and other items.

3

hearing, during which Mr. Sanchez had promised to pay. The court imposed punitive

sanctions of one day in jail and a $500 fine. The court also imposed remedial sanctions of

additional jail time and daily $500 fines, which could be purged by payment of the

outstanding $10,000. The court's oral rulings were memorialized in a written order.

Mr. Sanchez was taken into custody after the hearing. His attorney remitted the

payment that day, purging the remedial sanctions. Mr. Sanchez brings this timely appeal

from the order on findings of summary contempt.

ANALYSIS

Summary contempt proceedings are governed by RCW 7.21.050. A judge may

summarily impose remedial or punitive sanctions "upon a person who commits a

contempt of court within the courtroom if the judge certifies that he or she saw or heard

the contempt." RCW 7.21.050(1). Remedial sanctions are forward-looking and are

imposed "for the purpose of coercing performance." RCW 7.21.010(3). Punitive

sanctions are those "imposed to punish a past contempt of court." RCW 7.21.010(2).

Summary contempt is a unique, streamlined procedure. It does not require prior notice or

a hearing on the merits; sanctions are immediate and the contemnor is entitled only to

No. 36279-5-III
*Sanchez v. Rose*

speak in mitigation.[3] The purpose of summary contempt is to preserve "order" and protect "the authority and dignity of the court." RCW 7.21.050(1).

When contemptuous conduct occurs outside the courtroom, statutory summary contempt is unavailable. *See State v. Jordan*, 146 Wn. App. 395, 403-04, 190 P.3d 516 (2008); *State v. Winthrop*, 148 Wash. 526, 532, 269 P. 793 (1928).[4] Instead, other statutes come into play, requiring notice and a hearing. RCW 7.21.030(1), .040.

The superior court here lacked statutory authority to impose summary contempt sanctions. The acts of contempt—nonpayment of financial obligations and failure to facilitate access to property—did not occur during the court hearing; they occurred before. While Mr. Sanchez may have admitted to contemptuous conduct during his hearing, his truthful answer to the court's inquiry was merely evidence of contempt. It was not itself contempt. *In re Marriage of Nielsen*, 38 Wn. App. 586, 588, 687 P.2d 877 (1984) ("[A] contemptuous act is indirect [and therefore outside the presence of the

_____

[3] This requirement can be excused in "compelling circumstances." RCW 7.21.050(1).

[4] A trial court has inherent contempt authority in addition to its statutory contempt powers. However, a court may not resort to inherent contempt unless "'legislatively prescribed procedures and remedies are specifically found inadequate.'" *In re Dependency of A.K.*, 162 Wn.2d 632, 647, 174 P.3d 11 (2007) (plurality opinion) (quoting *Mead Sch. Dist. No. 354 v. Mead Educ. Ass'n*, 85 Wn.2d 278, 288, 534 P.2d 561 (1975)). This case does not involve inherent contempt. Our analysis is limited solely to the court's statutory authority.

5

court] even though the offender has admitted the act in open court."); *Winthrop*, 148

Wash. at 532 ("[The] appellant's conduct . . . occurred away from and out of the presence

of the court, and therefore . . . was not subject to [summary] discipline and punishment.").

The superior court was thus limited to pursuit of nonsummary contempt sanctions under

RCW 7.21.030 and .040.

This case is distinguishable from *In re Contempt Proceedings of Salvesen*,

78 Wn.2d 41, 469 P.2d 898 (1970). There, Thelma Salvesen repeatedly refused to appear

before a secret session of the grand jury without the presence of her attorney. *Id*. at 43-45.

The matter was presented before a judicial officer and the judge ordered compliance with

the grand jury subpoena. *Id*. at 43-44. After the grand jury reconvened, Ms. Salvesen

again refused to testify. *Id*. at 44. Upon reappearance before the presiding judge,

Ms. Salvesen not only admitted she had refused to testify, but she stated she would

continue defying the court's instructions regardless of any change in circumstances or

court order. *Id*. The presiding judge then found her in contempt and summarily issued

sanctions. *Id*. 44-45. The Supreme Court affirmed, explaining the circumstances qualified

for summary contempt because Ms. Salvesen had stated her intent to *continue* defying the

court's authority in the presiding judge's presence. *Id*. at 45-46.

Unlike Ms. Salvesen, Mr. Sanchez did not state he would continue to disobey the court's orders. Thus, no act of defiance occurred in the court's presence. While Mr. Sanchez may have engaged in contemptuous conduct before coming to court, he did not do anything to disrupt the proceedings while the court was in session. Thus, summary contempt proceedings were unwarranted.

## CONCLUSION

The superior court lacked authority to issue summary contempt sanctions under RCW 7.21.050. We therefore vacate the contempt order and dismiss the sanctions imposed without prejudice. Mr. Sanchez's request for attorney fees is denied, as it lacks legal or factual support. *See* RCW 7.21.030(3) (In nonsummary contempt proceedings, the *contemnor* may be required to pay for losses, including attorney's fees.); RCW 26.09.140 (The court has discretionary authority to award attorney fees in a dissolution proceeding under chapter 26.09 RCW based on comparative financial need.).

_____, A.C.J.
Pennell, A.C.J.

WE CONCUR:

_____
Korsmo, J.

_____
Fearing, J.

7