# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

## DIVISION II

| | |
|---|---|
| In the Matter of the Marriage of: | No. 58584-7-II |
| FLAVIO FAUSTINO LEIJA, | |
| Respondent, | UNPUBLISHED OPINION |
| and | |
| ANGELA GARCIA-LEIJA, | |
| Appellant. | |

GLASGOW, J.—Flavio Leija and Angela Garcia-Leija have been embroiled in contentious divorce proceedings since 2019. After a trial, the trial court entered a parenting plan and other orders. There were several posttrial hearings to address various failures to comply with the court's final orders. The trial court had to order that hearings be special set and the parties attend in person, rather than by videoconference, so that the trial court could be sure the parties heard and understood the court's rulings. Then, in the middle of a posttrial hearing in June 2023, Garcia-Leija got up and exited the courtroom while screaming. The trial court found Garcia-Leija in contempt for this incident and imposed a $100 fine. But the court's written contempt order stated that Garcia-Leija's failure to follow the court's order was not intentional.

Garcia-Leija argues that the trial court erred by holding her in contempt even though the court's written order stated that her behavior was not intentional. Considering the context, we conclude that the "not intentional" language was a clerical or scrivener's error. We affirm the

contempt order and remand only for the trial court to correct the error. We deny Leija's request for attorney fees on appeal.

FACTS

I. BACKGROUND

In August 2019, Flavio Leija petitioned for divorce from Angela Garcia-Leija. At the time, they had three dependent children. The dissolution proceedings were contentious. In 2021, Leija and Garcia-Leija were parties in a five-day trial to determine the parenting plan and division of property. The trial court also held more than thirty hearings before and after the trial. Both parties were held in contempt more than once for failure to follow the court's orders.

II. MAY 2023 HEARING

After the trial, the parties either disregarded or had significant disagreements about how to implement the trial court's division of property and parenting plan. This necessitated several posttrial hearings. The parties and the trial court would frequently interrupt each other, the hearings jumped from topic to topic, and it appears there was often confusion about exactly what the trial court had previously ordered. There was sometimes tension between Garcia-Leija or her counsel and the trial court.

At one such posttrial hearing on May 19, 2023, the trial court expressed concern that Garcia-Leija continued to take actions regarding her visits with the children that the court had not approved. Garcia-Leija's counsel and the trial judge became frustrated with each other. Then, Garcia-Leija and the trial court had the following exchange:

[GARCIA-LEIJA]:     Your Honor, this is --

THE COURT:          I don't want you to talk.

[GARCIA-LEIJA]:    -- your courtroom.

THE COURT:    Don't talk. I want you to leave the courtroom.

[GARCIA-LEIJA]:    You can discriminate me. You can be --

THE COURT:    Okay.

[GARCIA-LEIJA]:    biased, you can have a personal relationship with [Leija's counsel] that interferes with --

THE COURT:    Okay.

[GARCIA-LEIJA]:    -- your ability to rule fairly in this case. That's absolutely fine. It is your courtroom.

THE COURT:    You're right. It is.

Suppl. Verbatim Rep. of Proc. (VRP) (*Leija* I) at 162. [1] When Garcia-Leija left the courtroom, the trial court clarified with Garcia-Leija's counsel why she removed Garcia-Leija:

THE COURT:    So, my whole point is I was letting you know what this Court's concern is. My Court's concern is exactly what just happened just now with your client. That everything that we do here is unfair. And, that -- and then she makes the decisions herself on how she's gonna handle things.

[COUNSEL]:    It's not unfair. It's unprofessional. It's -- it's --

THE COURT:    Okay. Take a breath and I'm sorry. I'm apologizing to you right now. Take a breath. I'm sorry. I'm very frustrated by the information I keep getting back regarding your client's actions.

Suppl. VRP (*Leija* I) at 163.

During a hearing five days later, Leija's counsel reminded the trial court that it had previously ordered all parties to appear in person for special sets and trials. The trial court agreed, but noted that Garcia-Leija's absence from the current proceeding was allowed, stating, "This is

---

[1] This case is linked to case number 57487-0-II. Cites to the record in this opinion will be labeled "*Leija* I" when referring to the Verbatim Report of Proceedings from the first linked case.

not her fault that she's not present. We gave her permission to not be present." Suppl. VRP (*Leija* I) at 168.

Immediately after this interaction, Garcia-Leija appeared at the hearing on Zoom. The court asked her to turn on her camera, but Garcia-Leija refused: "No thank you. I got kicked out and I feel sick even coming to these calls with threats and discrimination." Suppl. VRP (*Leija* I) at 169. The court asked if Garcia-Leija would like to reschedule the hearing, and Garcia-Leija's counsel declined on her behalf. The court noted that according to Clark County protocols, parties must be on camera if allowed to appear via Zoom. The court also confirmed, "I did say all special sets, trials, we had to be here in person. But, we did give permission for [Garcia-Leija] not to appear and for her to appear via [Z]oom." Suppl. VRP (*Leija* I) at 170.

The court stated that it would like to have a conversation with the parties. Garcia-Leija's counsel asked Garcia-Leija again to turn on her camera: "[C]ould you -- would you please, please turn on your camera, because the [j]udge just wants to have a conversation." *Id.* Garcia-Leija responded, "I don't understand how it makes any sense for me to even be here because I got kicked out last time and it was very clear [the judge] said I don't care what you have to say. I don't want to hear anything you have to say." Suppl. VRP (*Leija* I) at 171.

The court called a recess to let Garcia-Leija's counsel speak with Garcia-Leija. However, before the recess, the court addressed Garcia-Leija directly:

> I don't want this to become an emotional setting as it did last time and I took part in that. And, I wanted to have a conversation about that. But, your behavior right now, you're just reaffirming . . . the entire reason that we get into these situations. So, if you can't follow the Court's rules, then . . . that's something else we're gonna have to address.

*Id.*

After the break, the court ruled, asserting, "From the duration moving forward, I want all of our stuff to not be on docket. I want it to be special set." Suppl. VRP (*Leija* I) at 173. Addressing Garcia-Leija's counsel, the court said, "I also appear to have no control, courtroom control, when it comes to your client," and "everything that I try to do, even to assist her, she undoes." *Id.*

Later, the trial court addressed Garcia-Leija again regarding her behavior in the courtroom:

THE COURT:         What happened in the courtroom the other day, and Ms. Garcia[-]Leija, I really wish you'd unmute and look at me, so I can understand that you hear me. If you cannot, I will make decisions based on that. Thank you.

[GARCIA-LEIJA]:    You know, I honestly believe that you haven't made any decisions in the best interest of the children. You just haven't listened to anything that I've had to say. You were very clear last hearing. So, I'm really sorry. Go ahead, I'm listening.

THE COURT:         So, I -- I asked you to leave the courtroom and I will do that again if you're in my courtroom and you show such disrespect. I want you to understand that as well. This is an open courtroom. The courtroom should always remain open as much as possible. But, not when you do the things that you did and responded the way that you responded. It caused a high --

[GARCIA-LEIJA]:    I had said nothing at all and you told me to get out. I had said nothing at all. I don't get it.

Suppl. VRP (*Leija* I) at 186.

In response to Garcia-Leija's comments, the court noted Garcia-Leija's history of behavior, but also acknowledged, "I can still indicate that I am not happy with how quickly I responded to that. That's why I would like to have a much calmer atmosphere when we have these hearings. Everyone will appear in person from this point forward and we will have special sets only." Suppl. VRP (*Leija* I) at 187. The trial court warned the parties:

I'm trying my best to be -- I'm not trying my best, I'm being fair sided. But, I'm -- but, I will respond to behavior. And so, if someone behaves in my courtroom again the way that happened last week, there will be a response.

Suppl. VRP (*Leija* I) at 189.

### III. JUNE 2023 HEARING AND CONTEMPT FINDING

On June 29, 2023, the parties had another hearing in front of the trial court. When discussing distribution of the parties' funds from financial accounts, Garcia-Leija interrupted:

[GARCIA-LEIJA]:    I'm sorry, [defense counsel], I can't be part of this.

THE COURT:        -- the contempt in other issues.

[COUNSEL]:        Angela, please.

THE COURT:        But, what doesn't matter is --

(Multiple speakers – indiscernible)

THE COURT:        My answer to my question doesn't --

[GARCIA-LEIJA]:    [defense counsel], I have no respect --

[COUNSEL]:        Just please sit down.

[GARCIA-LEIJA]:    So sorry, like there's never a chance in this courtroom for you or for me with this [j]udge.

[COUNSEL]:        Can you just sit down, Angela, please? For me, will you please sit down?

[GARCIA-LEIJA]:    It's beyond --

[COUNSEL]:        Just please sit down so I can speak.

[GARCIA-LEIJA]:    This is ridiculous.

[COUNSEL]:        Okay. Thank you. Please sit down.

[GARCIA-LEIJA]:    Wow.

Suppl. VRP (*Leija* I) at 215-16. Several minutes later, Garcia-Leija's attorney expressed her own frustration with the court:

| | |
|---|---|
| [COUNSEL]: | Can you please -- |
| THE COURT: | We'll reschedule this hearing. |
| [COUNSEL]: | I'm not coming back. |
| THE COURT: | You're not coming back to court? |
| [COUNSEL]: | You won't even answer my letter. |
| THE COURT: | Who won't answer your letter? |
| [COUNSEL]: | You don't let me speak. |
| [GARCIA-LEIJA]: | Affidavit of prejudice letter. |

Suppl. VRP (*Leija* I) at 224. At this point, Garcia-Leija walked to the courtroom exit and began screaming in the doorway before leaving the building. The court then addressed Garcia-Leija's counsel:

THE COURT: I'm ready to -- I'm ready to talk to you about all of this. Your client just left the courtroom. I am trying to let you speak. I do with you the same thing I do with [Leija's counsel].

[COUNSEL]: No, I --

THE COURT: I'm trying to ask them questions about why you're not getting what you want. I'm actually -- I'm actually disciplining them trying to get them to answer those questions and this is -- this is -- your response actually triggers her just as much as --

[COUNSEL]: I know it does. So, that's why I can't be on this case.

THE COURT: Yeah, well I don't know what to say, because no matter if I try to go your direction and try to -- and try to grill these guys for why they're not doing what you need them to do, then you still make it seem like I'm not doing my job to her. And, that behavior that she's displaying, it is not appropriate. It's absolutely not appropriate.

[COUNSEL]: I didn't say it was, Your Honor.

THE COURT: Telling me, that's disrespecting me. Walking in here.

> [COUNSEL]: I didn't say it was appropriate.
>
> THE COURT: . . . I won't even address my affidavit of prejudice. I will. I have the information right here. I intended to.
>
> [COUNSEL]: I just want the answer to that.
>
> THE COURT: I'm not withdrawing from this case.
>
> [COUNSEL]: I didn't ask you to.
>
> THE COURT: So, I'm not withdrawing from this case. We are not gonna finish this part of it today. I want the money all distributed by the next time I see you guys.

Suppl. VRP (*Leija* I)at 224-25. The trial court held Garcia-Leija in contempt for this incident, charging her a $100 civil fine.

The trial court entered a contempt order for Garcia-Leija's behavior during the June 2023 hearing. It stated:

> The court is finding [Garcia-Leija] in contempt. As memorialized in the May 24, 2023 order, the court had previously ordered both parties to appear in person for all future hearings. [Garcia-Leija] appeared, engaged in behavior unbecoming of court decorum, and then left the courtroom in violation of the order and instruction of [the judge] while the proceedings w[]ere ongoing.
>
> . . . .
>
> **a. Ability to follow order in the <u>past</u>** – This person **is** able to follow this order. The failure to follow this order was not intentional.
> **b. Ability to follow orders <u>now</u>** – This person **is able** to follow this order now. This person **is willing** to follow this order.

Clerk's Papers (CP) at 251.

## ANALYSIS

Garcia-Leija argues that the trial court abused its discretion by holding her in contempt even though the court's written order stated that her behavior was "not intentional." CP at 251. Leija responds that this is a clerical error. Leija contends that Garcia-Leija's behavior in the courtroom during the June 2023 hearing violated the court's orders both to be present during hearings and to behave respectfully in court. Leija states that Garcia-Leija knew about the May 2023 order requiring in-person attendance for hearings, so her departure from the courtroom during the June 2023 hearing must have been an intentional violation of that order.

## I. CONTEMPT PROCEDURE AND STANDARD OF REVIEW

Under RCW 7.21.050(1), a judge can summarily impose sanctions on an individual who commits contempt within the courtroom. These summary contempt sanctions are meant to "preserv[e] order in the court and protect[] the authority and dignity of the court." RCW 7.21.050(1). They can include a fine up to five hundred dollars or imprisonment for up to thirty days. RCW 7.21.050(2). An individual found in contempt under RCW 7.21.050 is not entitled to a notice or a hearing. Instead, the court must provide them with "an opportunity to speak in mitigation of the contempt unless compelling circumstances demand otherwise." RCW 7.21.050(1). Garcia-Leija does not challenge the contempt procedure in this case.

"Punishment for contempt of court is within the discretion of the trial court" and will be disturbed on appeal only if the trial court abused its discretion by basing its decision on untenable grounds or for untenable reasons. *In re Marriage of Myers*, 123 Wn. App. 889, 892-93, 99 P.3d 398 (2004). A contempt ruling based on an erroneous view of the law or an incorrect legal analysis constitutes an abuse of discretion. *In re Ests. of Smaldino*, 151 Wn. App. 356, 364, 212 P.3d 579 (2009).

## II. FINDING OF INTENT

Under RCW 7.21.010(1)(a) and (b), contempt of court includes "intentional . . . [d]isorderly, contemptuous, or insolent behavior toward the judge while holding the court," or "[d]isobedience of any lawful judgment, decree, order, or process of the court." Though the contempt statute does not define "intentional," courts have interpreted it as requiring actual or constructive knowledge of the "existence and substantive effect of the court's order or judgment." *Smaldino*, 151 Wn. App. at 365.

Courts have determined that the contempt statute does not require a trial court to make an express written finding that a party's violation of court orders was intentional. *See In re Structured Settlement Payment Rts of Rapid Settlements, Ltd.*, 189 Wn. App. 584, 604-05, 359 P.3d 823 (2015). In *In re Structured Settlement*, a contempt order satisfied the intentionality requirement because the party's "acts and omissions identified by the contempt order as violations were supported by evidence that established their inherently intentional character." 189 Wn. App. at 605.

Here, the court stated in its written contempt order that Garcia-Leija's past failure to appear in person for all hearings was "not intentional." CP at 251. Though the trial court did not need to expressly find that Garcia-Leija's behavior was intentional, existing case law does not address a situation where the court expressly found that a contemnor's actions were "not intentional."

It is conceivable that this "not intentional" language mistakenly referenced prior hearings where Garcia-Leija did not appear in person because the court had allowed her to appear on Zoom. However, the written contempt order in question specifically addressed the June 2023 hearing incident where Garcia-Leija screamed as she left the courtroom. It is hard to imagine that the trial

court believed this particular behavior was unintentional, especially given the warnings that the court gave Garcia-Leija about courtroom behavior over the course of posttrial proceedings.

The trial court's contempt order was thus supported by evidence that established the inherently intentional character of Garcia-Leija's behavior. Based on the full context of the record in this case, which does not indicate that the trial court thought Garcia-Leija's behavior at the June 2023 hearing was anything but intentional, we conclude the "not intentional" language in the contempt order was a clerical or scrivener's error. We affirm and remand for the trial court to correct the "not intentional" language.

## ATTORNEY FEES

Leija requests attorney fees under RCW 7.21.030(3), the statutory section addressing remedial contempt sanctions. RCW 7.21.030(3) states that a court may require a party found in contempt to pay another party reasonable attorney fees incurred for a contempt proceeding. Although Garcia-Leija fails to argue that this attorney fee provision is limited only to actions involving remedial contempt proceedings, Division Three has suggested that this attorney fee provision does not apply to summary contempt proceedings like this one. *Sanchez v. Rose*, 12 Wn. App. 2d 670, 676, 459 P.3d 336 (2020) (noting that "in *nonsummary* contempt proceedings," the contemnor may be required to pay attorney fees. (emphasis added)).

Although the contempt fine was only $100, and this appeal was part of a pattern of litigious and inappropriate courtroom behavior from Garcia-Leija, this case does not involve remedial sanctions. And because the contempt order arose from a dispute with the trial court that did not directly involve Leija, Leija could have declined to participate in this appeal. We deny Leija's request for attorney fees on appeal.

11

No. 58584-7-II

CONCLUSION

We affirm and remand only for correction of the clerical error in the contempt order.

A majority of the panel having determined that this opinion will not be printed in the Washington Appellate Reports, but will be filed for public record in accordance with RCW 2.06.040, it is so ordered.

GLASGOW, J.

We concur:

MAXA, P.J.

CHE, J.