Section 11256, General Code (Section 2307.20, Revised Code), reads:

"Parties who are united in interest must be joined, as plaintiffs or defendants. If the consent of one who should be joined as plaintiff can not be obtained, or, he is insane, and the consent of his guardian is not obtainable, or he has no guardian, and that fact is stated in the petition, he may be made a defendant."

The Supreme Court has held that rules of pleading not inconsistent with special statutes, are applicable in will contest cases. *Morton* v. *Fast, Exr.,* 159 Ohio St. 380, 112 N. E. (2d), 385, paragraph 1 of syllabus:

"The rules of pleading generally applicable in a civil action should be applied in a will contest except where they are inconsistent with special statutory provisions relating to such a contest."

It seems to me, therefore, that the trial court erred in holding that it was without jurisdiction to hear this case under the circumstances and facts therein, and that the judgment rendered by it should be reversed.

THE STATE OF OHIO, APPELLEE, *v.* MIRMAN, APPELLANT.

(No. 4557—Decided February 14, 1955.)

Mr. *Bernard J. Roetzel*, for appellee.
Messrs. *Davis & Lipps*, for appellant.

*Per Curiam*: This is an appeal on questions of law from a judgment of contempt.

The appellant, Edward Mirman, was duly summoned to appear before the grand jury of Summit County, Ohio. His counsel appeared for him and gave to the special prosecuting attorney a letter signed by Mirman, wherein he stated he would not appear before the grand jury and give testimony, because such grand jury "is not a legally-constituted body." Thereafter, a written "motion for contempt" was duly filed, and, at a hearing thereon, after due and proper notice, the trial court found Edward Mirman guilty of contempt. The judgment of contempt in part said:

"It is therefore ordered and adjudged that the said Edward Mirman be sentenced to ten days imprisonment in the county jail and pay a fine of $500 for said contempt. It is further ordered and considered upon the said Edward Mirman's indication of his present refusal to answer questions before the grand jury or to appear and attend before the grand jury for said purpose, that it is an act which he can yet perform and which

he refuses to perform, and that the court therefore adjudges him guilty of a continuing contempt and orders him imprisoned in the county jail until such time as he is willing to perform said act of giving testimony before the grand jury of Summit County. It is further considered that said term of ten days imprisonment and fine of $500 shall be effective after and when the said Edward Mirman is released by complying with the doing of the act required of him which he can yet perform, to wit, appearing before and testifying in front of said grand jury of Summit County, and that, while said Edward Mirman is confined for his failure to do the act required of him with respect to testifying before the grand jury, no time so spent shall be credited against the ten days sentence and the $500 fine adjudged against him.''

It is this judgment that is now before this court for review. The appellant, Edward Mirman, by way of assignments of error, says the trial court erred:

''1. In failing to discharge eight members of the grand jury who had served more than three consecutive weeks as grand jurors of Summit County, Ohio.

''2. In selecting six members of the grand jury illegally and contrary to the jury code and the rules of the court.

''3. In failing to discharge the grand jury.

''4. In finding appellant guilty of contempt of court for failure to appear and testify before an illegally-constituted body.

''5. In placing appellant in double jeopardy by finding him guilty of and sentencing him twice for the alleged commission of one offense.

''6. In denying appellant due process of law in the respects above mentioned.''

In consideration of these claimed errors, we do not find that the grand jury is an illegally-constituted body. The Revised Code provides, in Chapter 2939, Section 2939.02, et seq., for the organization and selection of a grand jury. Although the length of service of a grand jury is not expressly set out in the statutes, it is said, in Section 2939.04, Revised Code, that ''a person who has served as a grand juror *at a term of court* is prohibited from serving again, either as a grand juror or

petit juror, in that jury year in which the service is rendered, or in the next jury year." (Italics ours.)

We think it clearly apparent, when reading these sections relating to grand juries, that the term of service now provided by law is as it formerly was deemed to be—to wit, one term of court.

A grand jury, by the law of this state, is under the control and direction of the Court of Common Pleas; and unless there is express statutory limitation as to the court's authority, such court may recess or discharge the jury, as the nature of the matters and business of the county require.

Where a grand jury, after its selection and organization as required by law, is unable to proceed in its work because of the "sickness, death, discharge, or nonattendance" of a member, the statute (Section 2939.16, Revised Code) expressly provides that "the court may cause another to be sworn in his stead."

It is not, then, required, even though it may be a salutary way to proceed, that the person or persons selected to act as substitute grand jurors be chosen from the jury wheel, but the court, having charge of such grand jury, may select qualified talesman to sit as members of the body.

It is provided by Section 2313.38, Revised Code, that: "If the number for a grand jury is *insufficient*, the court may issue a special venire to the sheriff commanding him to summon the persons named therein to attend forthwith as grand jurors." (Italics ours.)

Although the sheriff did not summon the jurors in the instant case, we find that, under Section 311.22, Revised Code, such service of summons was properly made.

We believe that the pronouncement of the Supreme Court of the United States on the subject of the right of a witness to challenge the organization of a grand jury, accurately sets forth the law in such matters. That court, in the case of *Blair* v. *United States,* 250 U. S., 273, at page 281, 63 L. Ed. 979, at page 983, 39 S. Ct., 468, at page 471, said:

"But, aside from exceptions and qualifications—and none such is asserted in the present case—the witness is bound not only to attend but to tell what he knows in answer to questions

framed for the purpose of bringing out the truth of the matter under inquiry.

"He is not entitled to urge objections of incompetency or irrelevancy, such as a party might raise, for this is no concern of his. * * *.

"On familiar principles, he is not entitled to challenge the authority of the court or of the grand jury, provided they have a *de facto* existence and organization.

"He is not entitled to set limits to the investigation that the grand jury may conduct. The Fifth Amendment and the statutes relative to the organization of grand juries recognize such a jury as being possessed of the same power that pertained to its British prototype, and in our system examination of witnesses by a grand jury need not be preceded by a formal charge against a particular individual. * * * It is a grand inquest, a body with powers of investigation and inquisition, the scope of whose inquiries is not to be limited narrowly by questions of propriety or forecasts of the probable result of the investigation, or by doubts whether any particular individual will be found properly subject to an accusation of crime. As has been said before, the identity of the offender, and the precise nature of the offense, if there be one, normally are developed at the conclusion of the grand jury's labors, not at the beginning. * * *

"And, for the same reasons, witnesses are not entitled to take exception to the jurisdiction of the grand jury or the court over the particular subject-matter that is under investigation. In truth it is in the ordinary sense no concern of one summoned as a witness whether the offense is within the jurisdiction of the court or not. At least, the court and grand jury have authority and jurisdiction to investigate the facts in order to determine the question whether the facts show a case within their jurisdiction."

We therefore find that this grand jury is a lawfully constituted body.

It is further claimed, as noted in the assignments of error, that the court erred in "finding him guilty of and sentencing him twice for the alleged commission of one offense," thus placing the summoned witness in "double jeopardy."

Judgments and orders in contempt cases may be of differ-

ent kinds and made to different ends. One of the kinds is coercive—to compel a person to obey the lawful summons of a court and to keep him in custody until he does. Section 2705.06, Revised Code, states the power of the court in the following language: "When the contempt consists of the omission to do an act which the accused yet can perform, he may be imprisoned until he performs it." This code section is coercive rather than punitive, and figuratively places the key to the county jail in the contemnor's hands, to be used by him for his own release, whenever he sees fit to answer the summons. Without this power in the court, any summoned witness could obstruct the administration of justice and impede the operation of the entire judicial system.

Another section of the code provides a definite penalty, which is entirely punitive. It may be imposed in the public interest to vindicate the authority of the court and to deter other like derelictions. It is in the following words and phrases: "Upon the day fixed for the trial in a contempt proceeding the court shall investigate the charge, and hear any answer or testimony which the accused makes or offers. The court shall then determine whether the accused is guilty of the contempt charge. If it is found that he is guilty, he may be fined not more than five hundred dollars or imprisoned not more than ten days, or both." (Section 2705.05, Revised Code.)

It is argued here that the orders in the judgment of the court overlap and constitute a double punishment for the same act.

In answer to this claim, we need only point to that which is obvious—i. e., the coercive order made under authority of Section 2705.06, Revised Code, need not result in any imprisonment if the accused will submit, as is his duty, to the lawful summons of the court. Any imprisonment under this order is of his own volition, and he cannot here complain of his voluntary acts. Nor does incarceration under this statute necessarily atone for the contempt of which he has been found guilty—i. e., contumacy, which is defined as pertinaceous resistance to authority; willful disobedience to the summons or orders of a court; or willful contempt of court.

There is nothing illogical or inconsistent in a court entering

an order requiring a person, subject to it, to perform an act which is capable of being performed (responding to a summons) and committing him to jail until he indicates his willingness to perform it, and then, upon his compliance, require him to suffer a statutory penalty for the contempt which obstructed the administration of justice and impaired the normal operation of the court. The latter is entirely penal, and the former is coercive only.

It has long been recognized in this state that the inquisitorial function of the grand jury and compulsion of witnesses were incidents of state judicial power; and a summoned witness cannot, as stated above, challenge the authority of the court or of the grand jury, provided they have existence either legal or *de facto*. As an incident of judicial power, a Court of Common Pleas may enforce its orders through the medium of contempt.

We find in the instant case that the court did not abuse its power, and its judgment will be affirmed.

*Judgment affirmed.*

HUNSICKER, P. J., DOYLE and MIDDLETON, JJ., concur.

MIDDLETON, J., of the Third Appellate District, sitting by designation in the Ninth Appellate District.