OPINION
{¶ 1} Appellant Freida Miller appeals the decision of the Court of Common Pleas, Holmes County, which ordered that she be incarcerated in the county jail for contempt of court. The appellee is the State of Ohio. The relevant facts leading to this appeal are as follows.
 {¶ 2} Appellant performs midwife services for persons in the Holmes County area. In early 2002, appellant was indicted on charges of unauthorized practice of medicine, selling dangerous drugs, and possessing dangerous drugs. On May 1, 2002, appellant entered into a plea agreement with the state, wherein she pled guilty to the amended misdemeanor charge of attempted unauthorized practice of medicine (R.C. 4731.41, and to two misdemeanor counts of possessing dangerous drugs (R.C. 4729.51). Appellant was sentenced to 120 days in jail for each count, for a total of 360 days. The trial court suspended appellant's jail sentence and placed her on probation for three years.
 {¶ 3} On October 2, 2002, appellant was subpoenaed to testify before the Holmes County Grand Jury. Appellant appeared with counsel. During the initial grand jury proceeding, the prosecutor sought answers as to the sources of certain drugs obtained by appellant, such as Methergine, Oxytocin, Pitocin, and Syntocin. Appellant responded by repeatedly asserting her Fifth Amendment right against self-incrimination. The state immediately thereafter filed with the trial court a motion to compel testimony and a request for an order granting appellant immunity. See R.C. 2939.14 and R.C. 2945.44. A hearing before the trial court was conducted the same morning. The court thereupon ordered appellant from the bench to testify and granted her immunity. Appellant then reappeared before the grand jury, but attempted to evade or refused to answer most of the questions put forth to her. The colloquy with the prosecutor concluded as follows:
 {¶ 4} "Q. All right. I just want to go through this to summarize to make sure that I've given you every opportunity to answer these questions and that there isn't any dispute about what you're refusing to answer. You have indicated in your responses to my questions that there could be more than one person who has provided you with your supply of Pitocin, Methergine, Oxytocin, and Syntocin over the last several years; is that correct?
 {¶ 5} "A. Yes.
 {¶ 6} "Q. And you know the names of those individuals but you're not certain which one might have provided you with Pitocin, Methergine or which one is involved on December 17, 2001, or the other drugs on January 25, 2002; is that correct?
 {¶ 7} "A. That's a yes.
 {¶ 8} "Q. Because you had multiple sources for those drugs or have multiple sources for those drugs; is that correct?
 {¶ 9} "A. I guess, if multiple means more than one.
 {¶ 10} "Q. Multiple means more than one; and you are refusing to give us the names of any of those sources for those particular drugs which I've described in my questions?
 {¶ 11} "A. Yes.
 {¶ 12} "Q. All right. I don't have anything else, thank you." Tr. at 18-19.
 {¶ 13} The parties returned to the courtroom, at which time the state orally moved for a contempt finding. On October 3, 2002, at 3:00 PM, the trial court issued a judgment entry granting the state's motion to compel and request for immunity, and continued the matter for further hearing pending preparation of a transcript of the grand jury testimony. On October 17, 2002, the state filed a memorandum in support of a contempt finding against appellant.
 {¶ 14} On October 23, 2002, the trial court conducted a show cause hearing. Appellant appeared with counsel and entered a plea of "no contest." The court found her in indirect civil contempt and ordered her incarcerated until she purged the contempt finding by testifying before the grand jury, or until the grand jury term expired, whichever would come earlier. The court also limited the jail sentence to a maximum of 180 days.
 {¶ 15} On November 14, 2002, appellant filed a notice of appeal, and herein raises the following five Assignments of Error:
 {¶ 16} "I. The trial court erred in compelling witness/contemnor Freida Miller to testify at grand jury.
 {¶ 17} "II. The trial court erred in determining that appellant failed to abide by its order compelling her testimony before the grand jury.
 {¶ 18} "III. Although the trial court found that witness-appellant Freida Miller was guilty of indirect civil contempt, in effect the trial court's intent was punitive, such to render the contempt finding criminal and appellant's incarceration barred by double jeopardy.
 {¶ 19} "IV. Assuming, arguendo, that the finding of contempt was properly made, the sentence of the trial court is unduly harsh, is in violation of the law and constitutes abuse of discretion."
 I. {¶ 20} In her First Assignment of Error, appellant argues the trial court erred in compelling her to testify before the grand jury on October 2, 2002. We disagree.
 {¶ 21} Appellant first essentially contends the prosecutor's use of the grand jury proceeding was merely a means of harassment, embarrassment and punishment against her, citing Ohio v. Johnson (1984),467 U.S. 493, 104 S.Ct. 2536. Secondly, appellant argues she had not been formally granted immunity at the time of the second grand jury proceeding on October 2, 2002, as said immunity was not journalized in a judgment entry until later in the day.
 {¶ 22} However, it is well-established that an appellate court will not consider any error which a party complaining of the trial court's judgment could have called but did not call to the trial court's attention at a time when such error could have been avoided or corrected by the trial court. State v. 1981 Dodge Ram Van (1988), 36 Ohio St.3d 168,170, 522 N.E.2d 524. The record in the case sub judice reveals that appellant did not make either a written or oral motion to dismiss before the show cause hearing was conducted on October 23, 2002, nor did appellant at said hearing set forth any challenge to the validity of the court's underlying prior order to compel testimony. As such, we find appellant has waived any error in this regard. Accord Turner v. Turner
(May 18, 1999), Franklin App. No. 98AP999. We are further disinclined to invoke plain error under such circumstances. The doctrine of plain error is limited to exceptionally rare cases in which the error, left unobjected to at the trial court, "rises to the level of challenging the legitimacy of the underlying judicial process itself ." See Goldfuss v.Davidson, 79 Ohio St.3d 116, 122, 1997-Ohio-401, 679 N.E.2d 1099.
 {¶ 23} Appellant's First Assignment of Error is therefore overruled.
 II. {¶ 24} In her Second Assignment of Error, appellant argues the trial court erred in determining that she failed to follow its order to testify. We disagree.
 {¶ 25} Our standard of review regarding a finding of contempt is limited to a determination of whether the trial court abused its discretion. In re Mittas (Aug. 6, 1994), Stark App. No. 1994CA00053. In order to find an abuse of discretion, we must determine that the trial court's decision was unreasonable, arbitrary or unconscionable and not merely an error of law or judgment. Blakemore v. Blakemore (1983),5 Ohio St.3d 217, 219. Appellant argues that her frequent use of responses to the grand jury such as "I don't know, " "I don't remember," "I'm not sure," and "I know some names" does not support a finding that she refused to testify. Thus, we conclude appellant is challenging her contempt finding on a weight of the evidence basis. Nonetheless, an appellant is precluded from raising a manifest weight claim on appeal after entering a plea of no contest. See State v. Gronbach (July 1, 1999), Fairfield App. No. 98CA73, unreported, citing State v. Wells
(Feb. 16, 1999), Warren App. No. CA98-05-057, at 1. "The court can only weigh the evidence where the defendant has pled not guilty and evidence on both sides has been presented." Wells at 1, citing State v. McGhee
(Jan. 18, 1995), Montgomery App. No. 14515, at 2.
 {¶ 26} Accordingly, the trial court's contempt finding was not an abuse of discretion. Appellant's Second Assignment of Error is overruled.
 III. {¶ 27} In her Third Assignment of Error, appellant argues the trial court erred in finding her in indirect civil contempt, on the basis that the contempt finding was effectively a criminal sanction. We disagree.
 {¶ 28} Contempt has been defined as the disregard for judicial authority. State v. Flinn (1982), 7 Ohio App.3d 294. "It is conduct which brings the administration of justice into disrespect, or which tends to embarrass, impede or obstruct a court in the performance of its functions." Windham Bank v. Tomaszczyk (1971), 27 Ohio St.2d 55,271 N.E.2d 815, paragraph one of the syllabus. Contempt may be either direct or indirect. In re Purola (1991), 73 Ohio App.3d 306, 310,596 N.E.2d 1140. Direct contempt occurs in the presence of the court, while indirect contempt occurs outside its immediate presence. In the case sub judice, appellant does not challenge the indirectness finding; we thus turn to the second traditional contempt dichotomy: "Contempt is further classified as civil or criminal depending on the character and purpose of the contempt sanctions." Purola at 311. Criminal and civil contempt serve different ends within the judicial system. Civil contempt is designed to benefit the complainant and is remedial in nature. Id. Thus, an individual charged with civil contempt must be permitted to appear before the court and purge himself of the contempt by demonstrating compliance with the court's order. Id. Criminal contempt, on the other hand, is usually characterized by unconditional fines or prison sentences. Id. at 311. In the case of criminal contempt, there is no requirement that the person charged be permitted to purge him or herself of the contempt. Brown v. Executive 200, Inc. (1980), 64 Ohio St.2d 250. Demarcation between these two types of contempt can prove difficult, as both "contain an element of punishment." See State v. Birch,2002-Ohio-3734, Summit App. No. 20910. Nonetheless, "[t]he inquiry to be made under this test is `what does the court primarily seek to accomplish by imposing sentence?' " State v. Kilbane (1980), 61 Ohio St.2d 201,206, quoting Shillitani v. United States (1966), 384 U.S. 364, 369,86 S.Ct. 1531, 16 L.Ed.2d 622.
 {¶ 29} In support of her position that the purpose of the sanction was punishment, appellant notes the judgment entry technically states purging would occur not with her testifying before the grand jury, but rather if "the Court finds that she has purged herself of contempt." Judgment Entry, October 23, 2002, at 2. Furthermore, appellant contends, release from custody was not hinged upon her testifying per se, but that she was not to be released "without order of the Court." Judgment Entry, October 23, 2002, at 2. Finally, appellant argues the trial court inordinately focused on appellant's original conviction, exemplified by the judge's comment that appellant's utilization of the dangerous drugs was "not only illegal, it's bad medicine." Tr., October 23, 2002, at 13.
 {¶ 30} We find appellant's arguments in this regard unpersuasive. Imprisonment for civil contempt is remedial, for the benefit of the complainant, and continues until the defendant performs that which is ordered by the court. Imprisonment for criminal contempt is punitive, meant to vindicate the authority of the court, and limited to a specific time period. Hicks on Behalf of Feiock v. Feiock (1988), 485 U.S. 624,108 S.Ct. 1423, 99 L.Ed.2d 721. Upon review of the record, it is clear the sanction was meant to remedy appellant's disregard of the grand jury's legal function and was to the benefit of the prosecution in a pending investigation. In addition, although the court limited incarceration to the earlier of 180 days or the end of the grand jury term, the court put appellant on notice that she otherwise held the jail door key upon her compliance with the grand jury subpoena. Moreover, pursuant to R.C. 2705.06, "[w]hen the contempt consists of the omission to do an act which the accused yet can perform, he [or she] may be imprisoned until he performs it." R.C. 2705.06 is viewed as coercive rather than punitive. See State v. Mirman (1955), 99 Ohio App. 382, 387,133 N.E.2d 796. Under the circumstances of the case sub judice, we hold the remedy at issue was well within the parameters of civil contempt.Shillitani, supra.
 {¶ 31} Appellant next contends the contempt sanction is in effect a subsequent punishment for her earlier dangerous drug possession convictions, violating her constitutional right to be free from double jeopardy. However, as appellant concedes in her brief, double jeopardy claims generally are only applicable where the contempt finding is criminal rather than civil. See Dayton Women's Health Center v. Enix
(1991), 68 Ohio App.3d 579, 590, 589 N.E.2d 121. Based on our conclusions above, appellant's argument is without merit. Appellant thirdly argues that she was not afforded procedural safeguards during the contempt proceedings. For example, appellant cites Courtney v. Courtney (1984),16 Ohio App.3d 329, 475 N.E.2d 329, for the proposition that the service of a formal contempt citation is required under R.C. 2705.02. However, the record reveals no attempt to raise this issue by appellant or her counsel prior to entering the no contest plea. Therefore, we find appellant's claim of a procedural due process violation waived by her failure to preserve the issue for appeal. See, e.g., Sancho v. Sancho
(1996), 114 Ohio App.3d 636, 641, 683 N.E.2d 849, citing D.H. OvermyerCo., Inc. of Ohio v. Frick Co. (1971), 405 U.S. 174, 92 S.Ct. 775,31 L.Ed.2d 124. See, also, In re Contemnor Caron (2000), 110 Ohio Misc.2d 58,112, 744 N.E.2d 787, citing 60 A.L.R.2d 1244.
 {¶ 32} Accordingly, appellant's Third Assignment of Error is overruled.
 IV. {¶ 33} In her Fourth Assignment of Error, appellant contends the trial court erred in imposing its sentence for contempt. We disagree.
 {¶ 34} Appellant argues that the court's sanction of jail time versus a fine is indicative of bias and an intent to "put midwives such as [appellant] out of business." Appellant's Brief at 27. However, a judge is presumed to be fair, impartial, and objective. In ReDisqualification of Mascio (1990), 74 Ohio St.3d 1218, 1219. Judicial sanctions for civil contempt will not be reversed absent a showing of an abuse of discretion on the part of the trial court. Burchett v. Miller
(1997), 123 Ohio App.3d 550, 552, 704 N.E.2d 636, citing State ex rel.Ventrone v. Birkel (1981), 65 Ohio St.2d 10, 11, 417 N.E.2d 1249. Additionally, the time periods for incarceration found in R.C. 2705.05
must be read in pari materia with R.C. 2705.06, which states "[w]hen the contempt consists of the omission to do an act which the accused yet can perform, he may be imprisoned until he performs it." Upon review of the record, we find no abuse of discretion or demonstrable lack of impartiality in the sanction imposed by the trial court in this matter. As appropriately noted by the Court in Mirman, supra, "[w]ithout this [contempt] power in the court, any summoned witness could obstruct the administration of justice and impede the operation of the entire judicial system." Id. at 387.
 {¶ 35} Appellant's Fourth Assignment of Error is overruled.
 {¶ 36} For the reasons stated in the foregoing opinion, the judgment of the Court of Common Pleas, Holmes County, Ohio, is hereby affirmed.
By: Wise, J., Hoffman, P.J., and Farmer, J., concur.
Topic: Contempt of Court.